UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 770, Petitioner–Appellant,

v.

GELDIN MEAT COMPANY, Respondent–Appellee.

No. 92–55707.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1993.

Decided Jan. 12, 1994.

Henry M. Willis, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, CA, for petitioner-appellant.

Richard S. Rosenberg, Ballard, Rosenberg & Golper, Los Angeles, CA, for respondent-appellee.

1. The Union dropped its request for attorney's fees on appeal.

Before: FLETCHER, PREGERSON, and HALL, Circuit Judges.

PREGERSON, Circuit Judge:

## OVERVIEW

Appellant United Food and Commercial Workers Union, Local 770 ("the Union"), filed a petition to compel arbitration on March 16, 1992, to require Appellee Geldin Meat Company, Inc. ("Geldin") to arbitrate the Union's grievance concerning Geldin's alleged failure to provide its employees with health insurance as promised in the collective bargaining agreement. On March 26, 1992, the Union moved to compel arbitration and requested attorney's fees.[1]

The District Court denied the motion in an Order entered on May 22, 1992. The District Court had jurisdiction pursuant to the Taft–Hartly Act § 301, 29 U.S.C. § 185. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand to the District Court with instructions to compel arbitration.

## BACKGROUND

The Union and Geldin were parties to a collective bargaining agreement ("CBA"), effective through February 24, 1993, which governed the terms and conditions of employment for various employee groups. Article XVI of the CBA provided in part that, "The Employer shall provide employees and their eligible dependents with coverage under a group medical insurance program providing for major medical, prescription drug, dental care and vision care benefits. Employer shall pay the entire cost of enrollment of employees in such programs." Geldin provided these benefits from December 1988 through December 1991, through the Teamsters Local 63 Family Health Services Trust Fund ("the Plan").

The Plan was a jointly trusteed[2] employee benefit plan established through collective bargaining between Teamsters Local 63 and several employers in the meat industry, including Geldin. Joel Geldin, Plant Manager

2. A "jointly trusteed" plan is a pension or retirement plan which has an equal number of em-

of Geldin Meat Company, was one of the employer trustees of the Plan. Neither the Union, nor any of its agents or representatives, had any part in the establishment or administration of the Plan.

The Plan stopped paying employees' medical claims in December 1991. The Union filed a grievance on December 13, 1991,[3] protesting Geldin's selection of a plan that did not provide the medical benefits promised in Article XVI of the CBA. The grievance stated:

> Members are facing extreme hardship due to the fact that Employer does not offer adequate medical insurance. Members are not reimbursed for medical bills nor does the employer pay the medical expenses directly. Due to these circumstances, many members are facing collection agencies—their credit being consequently, destroyed. We are requesting that all eligible and outstanding bills be paid. Countless efforts have been made to solve these problems and no progress has been made.

The Union filed a Motion to Compel Arbitration in the District Court on March 26, 1992. The District Court denied the motion in an Order entered on May 22, 1992 on the ground that the dispute at issue was between the Union and the Pension Plan, a third party, not between the Union and Geldin.

## ANALYSIS

Several sections of the CBA are significant to the resolution of the issues before us. Article III of the CBA provides a procedure for resolving employee grievances, culminating in final and binding arbitration. That Article provides in pertinent part:

> *Section A.* Except as provided for in Article XII(A), no employee covered by this Agreement shall be demoted, suspended, dismissed or otherwise disciplined without just and sufficient cause. The maximum time of a suspension shall not exceed the balance of the workweek in which it occurs plus two (2) additional workweeks. *Should any action by an Employer cause any employee covered by this Agreement to become aggrieved,* such employee shall, in writing, make his complaint to the Union, within three (3) working days of said action by an Employer. Thereafter, in writing, the Union shall notify the Employer within five (5) working days of receiving said complaint from the aggrieved employee. Thereafter, the Union and the Employer shall have fifteen (15) working days in which to investigate and resolve said dispute.

> *Section B.* If the dispute is not resolved within the time period set forth in Section A, then upon written approval of the Employer, the Union and the grievant, the Conciliation Service of the State of California or the Federal Mediation and Conciliation Service shall be required to appoint a mediator to hear the dispute or recommend a settlement to the parties....

> If either party or the grievant objects to the submission of the dispute to a mediator of either of the governmental agencies named above, the parties to this Agreement shall attempt to agree upon an arbitrator. If agreement cannot be reached, an arbitrator shall then be selected in accordance with Sections C, D and E.

> If the parties do not resolve the dispute through the above procedures, then the Union may, within fifteen (15) days of the expiration of the investigation, demand that the dispute proceed to arbitration.

---

ployer and employee trustees, and under which contributions are paid to the trustees who invest the funds and pay benefits to eligible employees.

3. Three weeks later, in a case not before us on appeal, the Union and William Wilder, an employee of Harvey Sawyer Meat Company and participant in the Plan, filed a lawsuit in District Court against the Plan and its trustees. The suit alleged that the trustees had violated their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by (1) failing to act solely in the interests of the Plan's participants and beneficia-ries, (2) failing to act with the care, skill, prudence and diligence required of fiduciaries, and (3) failing to discharge their duties to the Plan in accordance with the documents and instruments governing the Plan. The Union sued in its representative capacity on behalf of all employees whom it represented in collective bargaining, including Geldin employees, who had been injured by the alleged ERISA violations. The Union later filed a Notice of Related Cases on March 27, 1992, advising the District Court of the pendency of the ERISA action.

Notice of the demand shall be given to the employer in writing.

CBA, Article III, Sections A, B (emphasis added).

■ The Union contends that the District Court overstepped its authority in deciding that the Union's grievance with Geldin was not arbitrable. Specifically, the Union asserts that the District Court could deny its motion to compel arbitration only by engaging in substantive contract interpretation. We review a District Court's denial of such motions *de novo*. *McKinstry Co. v. Sheet Metal Workers' Local 16*, 859 F.2d 1382, 1385 (9th Cir.1988).

■ The Supreme Court has stated unequivocally that the courts have *no business* determining the *merits* of a grievance under the guise of deciding questions of arbitrability under a collective bargaining agreement. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403 (1960); *AT & T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 649–50, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). The courts have the duty only to determine whether a party has breached its promise to arbitrate. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Although a party is not required to submit disputes to arbitration which the party has not agreed to submit, *id.*,

> the judicial inquiry … must be strictly confined to the question whether the reluctant party did agree to arbitrate…. An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* at 582–83, 80 S.Ct. at 1353 (emphasis added).

Geldin opposes the Union's attempts to compel arbitration on two grounds. First, Geldin contends that it did not agree to submit any issues to arbitration outside the realm of grievances concerning employee disciplinary action. Geldin points to the language and sentence structure of Article III, Section A as proof that only disputes concerning employee discipline are arbitrable.[4] Geldin asserts that a plain reading of this language shows that only disciplinary actions are at issue, because the language addressing grievance procedures immediately follows the language addressing employee disciplinary actions. Although the District Court did not directly decide this issue, the court appears to have accepted Geldin's argument that the Union's proposed interpretation "would fly in the face of well-recognized principles of contract interpretation which require the court to provide meaning to each and every provision." (ER at 83) (citations omitted).

Herein lies the rub. We are unpersuaded that Geldin has met its burden of establishing with "positive assurance" that Section A is not susceptible of an interpretation covering this dispute. The Union contends that the language in Section A, "Should any action by an Employer cause any employee covered by this Agreement to become aggrieved…." refers to *any action* by the employer, not just the disciplinary disputes referred to earlier in the section. We agree with the Union that Section A is readily susceptible to an interpretation that it was intended to cover any dispute not specifically excluded in the CBA, and thus falls squarely within the ambit contemplated by the Supreme Court in *Warrior & Gulf*. Further inquiry would require us to delve into an area of contract interpretation which the Supreme Court has clearly mandated as the arbitrator's realm. *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1353.

Moreover, as the Union points out, Section G provides additional grievance procedures necessary for the resolution of wage disputes, which are not disciplinary issues.

> *Section G.* Grievances involving wages or other money costs to the Employer must be filed within thirty (30) calendar days after the cause or event giving rise to

---

**4.** Geldin also contends that the Integration and Management Rights clauses in Articles IV and V of the CBA further exemplify the limited scope of the agreement's arbitration provision. These clauses contain boilerplate language standard to collective bargaining agreements and are of little help in resolving the issue before us.

the grievance, and such wage and money claims shall not be valid and collectible for a period earlier than one (1) year prior to the date of filing of the grievance or complaint with the Employer.

CBA, Article III, Section G. This section further supports the Union's position that the grievance procedure reaches beyond the issue of employee discipline found in Section A.

Geldin seeks refuge in a Seventh Circuit case, *Printing Specialties and Paper Products Union Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir.1987). We find this case unpersuasive. In *Nabisco*, the court held that, although the arbitration provisions of the collective bargaining agreement did not expressly exclude disputes concerning pension plan benefits, the pension dispute at issue was not arbitrable. The court based its finding on the "Pension Plan's independence from the collective bargaining agreement, the bargaining history of the parties, and the lack of Pension Plan terms in the collective bargaining agreement," as well as the vagueness of the contract's language. *Id.* at 104.

*Nabisco* appears contrary to both the Supreme Court's decision in *Warrior & Gulf* and our own decision in *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513 (9th Cir.1991). There we stated:

> Our own cases similarly recognize that the court should not look to substantive provisions of a collective bargaining agreement except insofar as it is necessary to consider exclusions to an arbitration clause.... Thus ... as in *AT & T* and *Warrior & Gulf*, it was proper for the court to look beyond the arbitration clause to a substantive provision of the agree-

ment, but only because the latter contained an express exclusion from arbitration....

In contrast, where there are no such exclusions from arbitration, we have limited our inquiry to the arbitration clause itself and refused to consider substantive provisions.

*Id.* at 521. In the present case, there is no language in the CBA that expressly excludes from arbitration disputes over Geldin's compliance with its promise to provide medical benefits. We decline to undertake further inquiry into substantive provisions of the contract to resolve this issue.

■ In sum, Geldin's argument necessarily must fail. In a situation such as this where the contract is susceptible to more than one interpretation, it is up to the arbitrator, not the District Court, to apply principles of contract law in interpreting the CBA.[5] This is true even where the District Court finds no merit to the union's underlying grievance. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. at 1346–47; *AT & T Technologies*, 475 U.S. at 649–50, 106 S.Ct. at 1418–19. Here, because the CBA can be interpreted to cover a dispute over any action by Geldin beyond those explicitly excluded by the CBA, all doubts must be resolved in favor of arbitrability. *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419. The District Court erred in not resolving this issue in favor of the Union.

But, it is Geldin's second ground which served as the basis in the District Court's denial of the Union's motion to compel. Geldin contends that the CBA covered only disputes between itself and the Union, not a third party. The Union does not appear to disagree. Geldin asserts that because any

---

5. In *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, the Supreme Court stated, The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.... The parties expect that [the labor arbitrator's] judgment of a particular grievance will reflect not only what the contract says but, insofar as the col-

lective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished.... The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.
*Warrior & Gulf*, 363 U.S. at 581–82, 80 S.Ct. at 1352–53.

injury to the Union was caused by the Plan's failure, there is no dispute between Geldin and the Union that is arbitrable. Accepting Geldin's assertions, the District Court found that the dispute "concerns the action or inaction of the medical plan chosen by the employer.... Since this is not an action by the employer, but by a third party, the grievance is not arbitrable." (ER at 84.) To support its ruling, the District Court found that "[t]he medical insurance plan has caused the injury. The employer, Geldin, was required to choose an insurance plan and pay the premiums. It has fulfilled those obligations." (ER at 83.)

This is the precise substantive issue that the Union sought to have arbitrated.[6] The Union asserted that Geldin breached its obligation under Article XVI of the CBA to choose a plan that actually provided benefits. The Union further argued that Geldin broke its promise under the CBA to provide benefits by choosing a plan that it knew or should have known was underfunded. As stated in the Union's brief, for the District Court to hold as it did, the court had to find:

> (1) that Geldin had no responsibility for selecting a provider that its Plant Manager (and Plan Trustee) knew or should have known could not deliver the benefits it promised for the contributions it was requiring Geldin and other employers to make and (2) that Geldin had no obligation to provide the benefits that it promised to its employees when the plan it chose failed.

(Petitioner's Brief at 11–12.)

Whether right or wrong on the merits, the Union has a colorable claim[7] against Geldin which may well be covered under the CBA.

6. Geldin contends that the Union admitted in the District Court that its grievance implicates only the conduct of the Plan and not of Geldin itself. This contention is incorrect. In its petition to compel arbitration, the Union clearly asserted that its grievance involved "alleged violations of the [CBA] with respect to [Geldin's] obligation to provide employees covered by the [CBA] with the contractually required health and welfare benefits."

7. As arbitrators have held in similar cases, compare e.g., In re Wenning Packing Co., 71 Lab.Arb. Rep. (BNA) 796 (Roomkin 1978) (employer vio-

The Supreme Court has consistently ruled that an order to arbitrate should be granted when the arbitration clause is susceptible of an interpretation that covers the dispute. Thus, the District Court exceeded its authority in denying the Union's motion to compel arbitration. The District Court could not have reached its conclusions without interpreting substantive contract provisions. We, therefore, reverse the District Court's Order with instructions to grant the motion and send the matter to binding arbitration.

REVERSED AND REMANDED.

lated the collective bargaining agreement by not satisfying claims after pension fund became insolvent because the collective bargaining agreement gave employees the right to a specified level of medical coverage) with e.g., In re Canteen Food & Vending Serv., 80 Lab.Arb.Rep. (BNA) 141 (Craver 1982) (employer's only obligation is to pay fund premiums; employer has no obligation to satisfy claims when the fund becomes insolvent).