**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Plaintiff–Appellant,**

v.

**COMMONWEALTH ALUMINUM CORPORATION, Defendant–Appellee.**

No. 97–6456.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1998.

Decided Dec. 11, 1998.

David R. Jury (argued), Rudolph L. Milasich (briefed), United Steelworkers of America, Pittsburgh, Pennsylvania, for Plaintiff–Appellant.

Richard S. Cleary (argued and briefed), Greenebaum, Doll & McDonald, PLLC, Louisville, Kentucky, Luann Devine (briefed), Greenebaum, Doll & McDonald, PLLC, Covington, Kentucky, for Defendant–Appellee.

Before: GUY, CLAY, and GILMAN, Circuit Judges.

## OPINION

RALPH B. GUY, JR., Circuit Judge.

Plaintiff, United Steelworkers of America, AFL–CIO–CLC (Union), appeals from the entry of judgment in favor of defendant, Commonwealth Aluminum Corporation (Commonwealth), in this action brought pursuant to § 301 of the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185. The Union filed this action seeking to compel Commonwealth to arbitrate five grievances relating to the denial of group insurance benefits under the grievance and arbitration provisions of the collective bargaining agreement dated May 8, 1995 (1995 Agreement or Agreement). On appeal, the Union argues that the district court erroneously concluded that the grievances were not arbitrable under the 1995 Agreement. Based on our review of the record and the arguments on appeal, we find no error and affirm.

## I.

The Union has been the exclusive collective bargaining representative for all bargaining unit employees at Commonwealth's facility in Lewisport, Kentucky, since 1970. Commonwealth and the Union have been parties to successive collective bargaining agreements since that time, including the 1995 Agreement at issue in this case.

Consistent with prior agreements, the 1995 Agreement contains a broad four-step grievance and arbitration procedure in Article 9, which states that employees "shall have the

right to use the grievance Procedure to grieve matters involving the interpretation and application of all provisions of this Agreement." This article also permits grievance committee members to bring policy grievances alleging a violation of a clause of the Agreement that affects more than one department at the third step of the grievance procedure. If a grievance is not resolved at Step 3, the Union may appeal the grievance to arbitration. The arbitration procedures, set forth in Article 10, include the following description of the arbitrator's function.

> The function and purpose of the arbitrator is to determine disputed facts upon which the application of the Agreement depends. The arbitrator shall therefore not have authority, nor shall it consider its function to include, the decision of any issue not submitted or to so interpret or apply the Agreement as to change the intent of the parties as determined by generally accepted rules of contract construction.

The grievance and arbitration provisions have remained essentially the same in the successive collective bargaining agreements leading up to the 1995 Agreement.

The 1995 Agreement, again consistent with prior agreements between the parties, includes an agreement to provide group insurance benefits. Specifically, Article 17 of the Agreement states:

> The Group Insurance Benefits shall be set forth in booklets which shall be distributed to all employees within ninety (90) days of the effective date of this Labor Agreement. These booklets, along with provisions of Appendix G, are incorporated herein and made a part of this Labor Agreement by such reference.

Appendix G to the 1995 Agreement provides in pertinent part:

> The parties have agreed to amend the Medical Plan effective January 1, 1996. All changed provisions of the Medical Plan will be fully described in a summary plan description which will be printed and dis-

tributed to all bargaining unit employees prior to January 1, 1996.

Thus, the booklets, incorporated by reference into the collective bargaining agreement, were to include a summary plan description of the group health insurance benefits available under two group health plans; the Primary Care Network (PCN) Plan and the Standard Plan. The plans are each set forth in a document entitled "Plan Document And Summary Plan Description" (Plan). This action involves benefits covered by the PCN Plan.[1] Finally, the Agreement provides in Article 24 that "[t]here shall be no verbal agreements entered into by either party which add to, delete from, or in any way change the specific provisions of this Agreement."

Commonwealth contracted with Core-Source, Inc., to provide the health insurance benefits. The Union is not a party to that agreement. Under both Plans, CoreSource is the Plan Supervisor and Commonwealth is the Plan Administrator. Claims for benefits payment are first submitted to CoreSource and, if a claim is denied, in whole or part, "the claimant may appeal the denial" and obtain a review by the Plan Administrator. The Plan Administrator is granted broad authority to decide disputes, determine eligibility, and interpret the terms and provisions of the Plan. Moreover, the decisions of the Plan Administrator are "final and binding." The Plan specifically states:

> It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator will be final and binding on all interested parties.

---

1. The PCN Plan is a cost-containment plan that requires employees to see a physician who has contracted to provide services for the network (primary care physician). A written referral from the primary care physician is required before seeing a specialist. Also, covered expenses incurred outside the network area are paid under the standard plan.

Finally, in accordance with the Employee Retirement Income Security Act of 1974 (ERISA), the Plan also gives notice that "[i]f the Plan Participant has a claim for benefits which is denied or ignored, in whole or part, that participant may file suit in state or federal court." *See* 29 U.S.C. § 1132(a)(1)(B) (participant or beneficiary may sue to recover benefits due under a plan, enforce his rights or clarify future rights).[2]

The Union brought five grievances on January 1, 1997, each of which related to the Health Care Benefits under the PCN Plan and alleged violation of Article 17 of the 1995 Agreement. Before the grievances were filed, the Union wrote to a Commonwealth benefits manager indicating that it would file a general grievance on behalf of its members affected by CoreSource's requirement that a referral be obtained for certain "non-routine" OB/GYN care. Commonwealth responded that this matter was not grievable, but should be appealed through the Plan's claims procedure. In fact, one of the five grievances filed was a general grievance claiming Commonwealth violated the Agreement "by allowing CoreSource to require a referral for certain X-rays, lab work and surgical procedures related to bi-annual OB/GYN office visits." There were also three individual member grievances alleging Commonwealth violated the Agreement by allowing Core-Source to process claims at the "out-of-network rate." Specifically, these grievances challenged (1) a primary care physician's denial of a referral for elective surgery; (2) a requirement that "out-of-area" plan participants must first seek care from a primary care doctor to receive benefits under the PCN Plan; and (3) the failure to pay for a beneficiary's medical tests at the "in-network" rate despite assurances from Core-Source that she could proceed with them. Finally, the Union filed a general grievance alleging only that Commonwealth violated the Agreement "by making unilateral changes in health care benefits."

Commonwealth responded that any disputed claims for benefits must be appealed through the claims procedure in the Plan, not the grievance procedure in the collective bargaining agreement, and asked that the grievances be withdrawn. Shortly thereafter, Commonwealth returned the grievances to the Union, restating its position that "issues relating to the health insurance plan are not grievable or arbitrable."

The Union commenced this action to compel Commonwealth to arbitrate these five grievances pursuant to the grievance and arbitration provisions of the 1995 Agreement. Commonwealth moved to dismiss, or for summary judgment, and the Union filed a cross-motion for summary judgment. Finding that the grievances were not arbitrable, the district court granted Commonwealth's motion for summary judgment and denied the Union's cross-motion for summary judgment on October 24, 1997. The Union filed this appeal.

## II.

■ We review de novo the district court's grant of summary judgment. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Also, "[a]s is the case with all contract interpretation, the proper interpretation of a collective bargaining agreement is determined de novo by this court." *Salary Policy Employee Panel v. Tennessee Valley Auth.*, 149 F.3d 485, 489 (6th Cir.1998) (citation omitted).

The United States Supreme Court established the guiding principles applicable to an action to compel arbitration under a collective bargaining agreement in the *Steelworkers Trilogy*[3] and reaffirmed them in *AT & T*

---

2. Although the Union implies that the final and binding nature of the claims review process is mandated by ERISA, the Union has not offered any authority to show that ERISA precludes a claims review procedure from allowing disputes to be subject to arbitration. *See, e.g., Graphic Communications Union v. GCIU–Employer Retirement Benefit Plan*, 917 F.2d 1184 (9th Cir. 1990) (mandatory arbitration provision in employee benefit plan was not rendered unenforcea-

ble by ERISA); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226 (11th Cir.1985) (pension plan provided that disputes may be grieved under the collective bargaining agreement and may be appealed to arbitration).

3. The *"Steelworkers Trilogy"* refers to *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation*

*Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). These guiding principles were summarized by this court in *United Steelworkers v. Mead Corp.,* 21 F.3d 128 (6th Cir.1994), as follows:

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitrability "particularly applicable," and only an express provision excluding a particular grievance from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

*Id.* at 131 (citing *AT & T Technologies,* 475 U.S. at 648–51, 106 S.Ct. 1415, quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

■ In this case, there is no dispute that the question of whether the grievances are arbitrable under the 1995 Agreement is an issue for judicial determination. Further, as the district court recognized, the grievance procedure broadly encompasses "matters involving the interpretation and application of all provisions of this Agreement." *See Mead,* 21 F.3d at 132 (discussing cases that found arbitration provision was broad). As a result, the presumption of arbitrability is particularly applicable here and, absent "any

express provision excluding a particular grievance from arbitration," or " the most forceful evidence of a purpose to exclude the claim from arbitration," the grievances are subject to arbitration. *See Warrior & Gulf,* 363 U.S. at 584–85, 80 S.Ct. 1347.

■ The district court concluded that "[t]he intent to not arbitrate disputes concerning the denial of medical plan benefits is expressly stated by the inclusion of the claims review procedure and the language stating that the decisions of the Plan Administrator are final and binding." *See International Ass'n. of Machinists and Aerospace Workers v. Waukesha Engine Div., Dresser Indus., Inc.,* 17 F.3d 196 (7th Cir.1994); *Local No. 4-449, Oil, Chemical and Atomic Workers v. Amoco Chemical Corp.,* 589 F.2d 162 (5th Cir.1979). We agree.

The Union argues that "each of the grievances, on its face, alleges a violation of terms which are incorporated into the 1995 Agreement at Article 17, namely, group insurance benefits." Article 17 expressly incorporates the booklet describing the group insurance benefits and the agreed changes to the medical plan into the parties' collective bargaining agreement. That, however, does not end the inquiry because the claims review procedure was also incorporated into the collective bargaining agreement. As the district court recognized, the crux of the issue in this case is whether the parties expressed an intention to exclude grievances involving benefit determinations from arbitration.

We find that the incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefit disputes which are within the Administrator's authority. Further, we find the grievances allege denial of group insurance benefits under the PCN Plan. As such, they come within the Administrator's broad authority to interpret the terms of the Plan, make eligibility determinations, decide disputes concerning a par-

*Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise*

*Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

ticipant's rights, and decide questions of both fact and Plan interpretation.

The Union makes an attempt to characterize the grievances as complaining about a failure to pay the negotiated level of benefits, noting that each of the grievances allege violation of Article 17 and that one of the general grievances alleges Commonwealth violated the Agreement "by making unilateral changes in health care benefits." The Union implies that Commonwealth failed to either provide the Plan booklets, or fully describe all changed provisions of the medical plan. To the extent that the Union's arguments may be read to claim that the negotiated level of benefits were not properly set out in the Plan booklets, the issue was not presented to or decided by the district court and is not specifically alleged or briefed on appeal. Thus, the issue is not properly before us.

Further, our conclusion that the terms of the claims review procedure incorporated into the Agreement expressly excludes such benefits disputes from arbitration is consistent with the decisions of the Seventh and Fifth Circuits in *Waukesha* and *Amoco,* upon which the district court relied.

In *Waukesha,* the collective bargaining agreement expressly incorporated the group benefits plan, which provided that the third-party administrator would determine whether services were "medically necessary." The administrator denied the request of a participant, Mr. Schmoller, for approval of an extension of his wife's hospital stay. The plan included a claims review procedure stating that a participant may appeal to the administrator for a review of the determination. It also advised that a participant whose request for benefits is denied may file suit in state or federal court. Mr. Schmoller unsuccessfully appealed the determination to the administrator and the union filed a grievance on his behalf, which was also denied. The Seventh Circuit affirmed the dismissal of the union's lawsuit seeking to compel arbitration, explaining:

> The issue is whether IAM [the union], on behalf of the Schmollers, may also utilize the less expensive alternative of arbitration in reviewing Aetna's denial. However, the fact that the Plan expressly provides for an alternative review procedure indicates that the parties did not intend to arbitrate disputes concerning the denial of benefits.

*Waukesha,* 17 F.3d at 198. The court also rejected the claim that the determination that the hospital stay was not "medically necessary" was tantamount to a denial of coverage, emphasizing that the dispute did not implicate any other terms of the collective bargaining agreement. *Id.* at 198–99.

Similarly, in *Amoco,* the collective bargaining agreement provided that sickness and disability benefits would be paid in accordance with the sickness and disability benefits plan in effect at the time. The plan provided that the decision of the board of directors of the company on any matter concerning the administration of the plan, or as applied in any case, shall be final and the board reserved the right to interpret, apply, amend or revoke the plan. The plaintiff union sued to compel arbitration of the grievances contesting the denial of sick pay benefits. The Fifth Circuit affirmed the refusal to compel arbitration, relying upon the district court's conclusion that:

> It is apparent from the face of the Agreement and Plan that problems concerning sickness and disability benefits were intended to be allocated to the Board for final determination. This process, which is expressly constructed by the Agreement and the Plan, sufficiently excludes arbitration for grievances concerning sickness and disability benefits.

*Amoco,* 589 F.2d at 164. The court explained that the language making the board's decision final in these matters "obviously excludes arbitration for grievances concerning such subject matter." *Id.*

The Union argues that there is some doubt whether the claims review procedure in this case was intended to exclude benefit disputes from arbitration because it states that if a claim is denied, in whole or part, the claimant "may" appeal to the Administrator. The use of a "permissive 'may,' " the Union contends, makes it plausible to conclude "that the employee 'may' also decide not to invoke the claims review procedure and 'may' choose to file a grievance thereby turning the matter

over to the Union to arbitrate if it finds merit in the grievance." We disagree. Such an interpretation would conflict with the inclusion of the claims review procedure expressly granting broad authority to the Administrator and declaring its decisions to be final and binding on all interested parties. In addition, as Commonwealth notes, we have held that such a permissive may does not permit a plan participant to forego the administrative claims procedure and simply file suit under ERISA. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454 (6th Cir.1991). Similarly, we find the use of "may" in the Plan does not suggest an intention to allow a claimant the alternative of having the union pursue a benefit determination dispute through the grievance and arbitration procedure.[4]

The Union relies on *United Food and Commercial Workers Union, Local 770 v. Geldin Meat Co.*, 13 F.3d 1365 (9th Cir.1994), and *Local 232, Allied Industrial Workers v. Briggs & Stratton Corp.*, 837 F.2d 782 (7th Cir.1988), two cases where disputes involving plan benefits were found to be arbitrable under broad grievance and arbitration procedures. Close examination of the facts and reasoning in these cases reveals that they are inapplicable to the circumstances presented here. Neither case involved a dispute over a determination of eligibility for payment of a claim for benefits, or addressed the question of whether the claims were excluded from arbitration by a claims review procedure.

In *Geldin Meat*, the employer agreed to provide employees and dependents with coverage under group medical insurance. After the medical benefits plan had operated for several years, it ceased paying any claims. The union's grievance claimed that the em-ployer had breached its agreement to provide coverage under a group medical insurance plan by selecting an under-funded plan. The court concluded that the broad grievance and arbitration provision, which was applicable "[s]hould any action by an Employer cause any employee covered by the Agreement to be aggrieved," applied to this dispute. *Geldin Meat*, 13 F.3d at 1367.

In *Briggs & Stratton*, the union claimed that the company's unilateral changes to the retirement plan violated the provision that "the existing Retirement Plan as amended by this agreement will be maintained during the term of this agreement." Although the changes to the retirement plan .only increased benefits for non-union employees, the retirement plan referenced in the collective bargaining agreement applied to union and non-union employees alike. Finding that changes to the plan that only affected non-union employees could arguably constitute a failure to "maintain" the existing plan, the Seventh Circuit held the grievance was arbitrable.[5]

Finally, we note that this court's decision in *Mead* is consistent with *Waukesha* and *Amoco*, and is likewise distinguishable from this case. In *Mead*, the union claimed that the employer's unilateral offer of early retirement incentives to non-union employees violated the express agreement to maintain a retirement plan as agreed and not to reduce retirement benefits. The union argued that although the incentives program was offered to non-union employees, the retirement plan covered both union and non-union employees and could arguably constitute a failure to "maintain the agreed plan." *Mead*, 21 F.3d at 132.[6]

---

4. In addition, the Union's reliance upon this court's decision in *Hotel & Restaurant Employees & Bartenders Int'l v. Playboy Clubs Int'l, Inc.*, 454 F.2d 703 (6th Cir.1972), is misplaced. The collective bargaining agreement provided for internal review with a final decision by the vice president of all discharges, except for those based on union activity. When the plaintiff was terminated, she invoked the review procedure and her termination was upheld. The union filed a grievance claiming that the termination was for union activity, a claim that the parties had expressly agreed was subject to arbitration.

5. In *Waukesha*, 17 F.3d at 199, the Seventh Circuit distinguished its earlier decision in *Briggs & Stratton*.

6. In a supplemental citation to authority, the Union relies upon *Local 369, Utility Workers Union of America v. Boston Edison Co.*, 752 F.2d 1 (1st Cir.1984). The court, in an unusually postured arbitration case, was asked to review an arbitrator's award declaring that the dispute at issue was not arbitrable. In *Boston Edison*, the court found the determination by the administrator of a disability benefits plan that an employee on layoff status had been "terminated" for purposes of the plan and was no longer eligible for

We find that the terms of the claims review procedure incorporated into the 1995 Agreement expressly excluded from arbitration the five grievances at issue in this case.

**AFFIRMED.**

disability benefits was a matter subject to arbitration. Critical to that decision, however, was the finding that the scope of the plan administrator's authority was only to make fact-specific decisions about disability, not to interpret the meaning of "terminated" under the plan. *Id.* at 3. In this case the Plan Administrator was vested with maximum authority to not only make eligibility determinations, but to construe and interpret the provisions of the Plan.