STANDARD CONCRETE PRODUCTS INC., Plaintiff–Appellee,

v.

GENERAL TRUCK DRIVERS, OFFICE, FOOD AND WAREHOUSE UNION, LOCAL 952, Defendant–Appellant.

Standard Concrete Products Inc., Plaintiff–Appellant,

v.

General Truck Drivers, Office, Food and Warehouse Union, Local 952, Defendant–Appellee.

Nos. 01–57256, 01–57257.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 2003.

Filed Dec. 18, 2003.

James F. Wallington, (argued and brief) and Katherine A. McDonough, (brief) Baptiste & Wilder, P.C., Washington, D.C., for the defendant/appellant/appellee.

Howard C. Hay, (argued and brief) and Glenn L. Briggs (brief), Paul, Hastings, Janofsky & Walker, LLP, Costa Mesa, CA, for the plaintiff/appellee/appellant.

Before PREGERSON, TASHIMA, and CLIFTON, Circuit Judges.

PREGERSON, Circuit Judge:

Plaintiff Standard Concrete Products ("Standard Concrete") delivers concrete throughout Southern California. Relevant to this appeal, Standard Concrete has facilities in Riverside County and in Orange County. The International Brotherhood of the Teamsters, General Truck Drivers, Office, Food & Warehouse Union, Local 952 represents Standard Concrete's employees at its Corona facility in Riverside County ("Corona bargaining unit"). Local 952 also represents Standard Concrete's employees at its three Orange County facilities ("Orange County bargaining unit") under a separate collective bargaining agreement.

In January 2000, the Corona bargaining unit went on strike against Standard Concrete. The strike was called because the Corona bargaining unit believed that Standard Concrete was negotiating with Local 952 in bad faith. Members of the Corona bargaining unit established picket lines at the Corona facility. On the second day of the strike, the Corona bargaining unit extended its picket lines to Standard Concrete's three facilities in Orange County. Members of the Orange County bargaining unit honored the Corona bargaining unit's picket lines.

At issue in this case is whether the Orange County bargaining unit violated its Collective Bargaining Agreement ("CBA") with Standard Concrete when members of the Orange County bargaining unit honored the Corona bargaining unit's picket lines at the Standard Concrete facilities in Orange County. On January 6, 2000, Standard Concrete filed a complaint against Local 952 in the United States District Court for the Central District of California. The complaint alleged that Local 952 breached the no-strike clause in the Orange County CBA by participating in and encouraging the Orange County bargaining unit members to honor the Corona

bargaining unit's picket lines. On April 27, 2000, Local 952 filed a motion to dismiss the complaint, arguing that Standard Concrete violated the Orange County CBA by failing to submit the dispute to arbitration. Standard Concrete opposed Local 952's motion to dismiss and in addition filed a motion seeking summary judgment against Local 952.

The district court denied Local 952's motion to dismiss and held that the Orange County CBA did not require Standard Concrete to arbitrate its dispute with Local 952. In addition, the district court granted Standard Concrete's motion for summary judgment, holding that Local 952 violated the Orange County CBA when the members of the Orange County bargaining unit participated in a sympathy strike and refused to cross the Corona bargaining unit's picket line. The district court then held a bench trial on the issue of Standard Concrete's damages. After a three day trial, the district court awarded Standard Concrete $802,327.00 damages plus costs.

On appeal, Local 952 challenges the district court's summary judgment order that Local 952 and the members of the Orange County bargaining unit violated its CBA with Standard Concrete by honoring the Corona bargaining unit's picket line. We affirm in part and reverse in part.

## FACTUAL BACKGROUND

### 1. Primary Dispute

For approximately twenty years, Local 952 has represented the employees at the Standard Concrete plant in Corona, California. On October 31, 1999, Standard Concrete withdrew its recognition of Local 952 as the collective bargaining representative of the Corona unit's employees, and refused to negotiate a new collective bargaining agreement with Local 952. Local 952 filed charges with the National Labor Relations Board alleging that Standard Concrete unlawfully withdrew recognition of Local 952 as the representative of the Corona unit's employees. In addition, Local 952 filed a petition with the National Labor Relations Board seeking an election to establish its representation of the Corona employees.

A month later, Local 952 won a new NLRB-conducted election to represent Standard Concrete's employees at the Corona facility. On December 10, 1999, the National Labor Relations Board certified Local 952 as the collective bargaining representative of the Corona facility's employees. After Local 952 was recertified, the Corona bargaining unit and Standard Concrete began negotiating a new collective bargaining agreement.

After several negotiating sessions, Local 952 determined that Standard Concrete was negotiating in bad faith. Thus, on January 5, 2000, Local 952's Corona bargaining unit went on strike to compel Standard Concrete to negotiate in good faith. The Corona bargaining unit set up picket lines at Standard Concrete's Corona facility and at Standard Concrete's job sites in Riverside County.

On January 6, 2000 and January 7, 2000, the Corona bargaining unit extended its picket lines to three of Standard Concrete's facilities in Orange County: El Toro, Santa Ana, and Westminster. Local 952 also represents the workers at all three Standard Concrete Orange County facilities under the Orange County CBA.

Members of the Orange County bargaining unit at all three Orange County facilities honored the Corona bargaining unit's picket line at Standard Concrete's Orange County facilities. Acting in solidarity with the Corona bargaining unit, the Orange County bargaining unit members informed Standard Concrete that they would not cross the Corona bargaining unit's picket

line. None of the Orange County bargaining unit members, however, participated in the Corona bargaining unit's picket line.

After three days of picketing, Local 952 and Standard Concrete agreed in writing to cease picketing at Standard Concrete's Orange County facilities from January 8, 2000 to January 18, 2000. In exchange, Standard Concrete agreed to resume negotiations with the Corona bargaining unit.

At the expiration of the ten-day period, the Corona bargaining unit resumed picketing to pressure Standard Concrete to negotiate in good faith. From January 18, 2000 to January 28, 2000, the Corona bargaining unit again extended its picket lines to the Orange County facilities.

Members of the Orange County bargaining unit again refused to cross the Corona bargaining unit's picket lines at Standard Concrete's Orange County facilities. Again, members of the Orange County bargaining unit did not join the Corona bargaining unit's picket lines.

On February 3, 2000, the Corona bargaining unit and Standard Concrete settled their labor dispute. They subsequently entered into a collective bargaining agreement covering the employees at the Corona facility.

## 2. Secondary dispute

This case arises out of the Orange County bargaining unit's sympathy strike that honored the Corona bargaining unit's picket lines at Standard Concrete's Orange County facilities.

The Orange County CBA in effect at the time contained several provisions relevant to this case. The Orange County CBA begins with a recognition clause, Article 1, Section 1, that states: "The employer recognizes the Union as the exclusive representative for the purposes of collective bargaining ... for all employees in the bargaining unit working at its locations [in Westminster, El Toro, and Santa Ana]." Article IX, Section 1 of the Orange County CBA provides that: "No employee shall be discharged or discriminated against because of his/her ... Union activities, including his/ her refusal to cross a picket line approved by the Union." Article II, Section 1 of the agreement states that: "For the period of this Agreement, neither the Union nor its members will cause or take part in any strike ... and the Union and its officers shall do all in their power to prevent strikes." [1]

In addition, the Orange County CBA includes an arbitration provision. In Article XI, Section 1, the grievance procedure establishes a three-step process by which Standard Concrete and Local 952 deal with grievances.

## PROCEDURAL HISTORY

Standard Concrete did not submit its dispute with the Orange County bargaining unit to arbitration. Instead, on January 6, 2000, Standard Concrete filed suit in the United States District Court for the Central District of California. Relevant to this appeal, Standard Concrete alleged that Local 952 violated the "no strike" provision of the Orange County CBA. On April 27, 2000, Local 952 filed a motion to dismiss the complaint, or in the alternative for summary judgment. Local 952 argued that Standard Concrete violated the Orange County CBA by failing to arbitrate

1. Following the labor dispute between the Corona bargaining unit and Standard Concrete, the Orange County bargaining unit and Standard Concrete entered into a successor collective bargaining agreement, effective January 16, 2001. In contrast to the 1997–2001 CBA, the successor CBA expressly prohibits the Orange County bargaining unit from honoring the picket lines of other Local 952 bargaining units.

its dispute with Local 952 before bringing suit in district court.

On November 28, 2000, the district court denied Local 952's motion to dismiss the complaint. The district court held that Standard Concrete was not required to arbitrate its complaint with the Union because the arbitration clause in the Orange County CBA requires only employees, and not Standard Concrete, to arbitrate their grievances.

On March 5, 2001, Local 952 moved for summary judgment on the ground that the Orange County bargaining unit acted in accordance with the Orange County CBA when its members honored the Corona picket lines. Standard Concrete filed a cross-motion for summary judgment, contending that Local 952 violated the Orange County CBA by extending the Corona picket lines to Standard Concrete's Orange County facilities and encouraging the Orange County members to honor the picket lines.

The district court granted summary judgment in favor of Standard Concrete. During oral argument, the court interpreted the no strike clause in the Orange County CBA to mean that Local 952 had an obligation independent of the obligation of the Orange County bargaining unit to not cause or take part in any strike. On April 10, the district court issued a written order holding that Local 952 violated the Orange County CBA because it did not abide by its duty to "do all in their power to prevent strikes." The court held that Article II, Section 1 was a clear waiver of "the Union's" right to participate in a sympathy strike. Furthermore, the court held that the Orange County bargaining unit's refusal to cross the Corona bargaining unit's picket lines was not a "sympathy strike" because "it was not a different Union that set up the line at Standard Concrete's Orange County facilities."

The district court held a bench trial to determine the damages Standard Concrete suffered as a result of Local 952's breach of the Orange County CBA. After a three day bench trial, the district court awarded Standard Concrete $802,327 in damages.

## STANDARD OF REVIEW

This court reviews a grant of a motion for summary judgment de novo. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir.2000). In reviewing a judgment as a matter of law, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149–50, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If conflicting inferences may be drawn from the facts, the case must go to the jury. *Howard*, 228 F.3d at 1060.

## DISCUSSION

### I.

Local 952 argues that the district court erred in holding that the Orange County CBA did not require Standard Concrete to arbitrate its dispute with Local 952. The district court's decision, Local 952 contends, is contrary to the strong presumption in favor of arbitration and this court's precedent. Standard Concrete argues that the district court correctly held that the grievance procedure, by its plain text, only requires *employees* to arbitrate their disputes. We agree with the district court and hold that the Orange County CBA did not require Standard Concrete to arbitrate its grievances with Local 952 before filing suit in district court.

Under 29 U.S.C. § 185(a), Congress "assigned the courts the duty of

determining whether the reluctant party has breached his promise to arbitrate." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (hereinafter *Warrior & Gulf Navigation*); *see also United Food and Commercial Workers Union, Local 770 v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir.1994) (hereinafter *Geldin Meat Co.*) ("The courts have the duty only to determine whether a party has breached its promise to arbitrate."). The final "[dispute-resolution] method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). Our determination whether the Orange County CBA required Standard Concrete to arbitrate its grievances "must be strictly confined to the question whether [Standard Concrete] did agree to arbitrate." *Geldin Meat Co.*, 13 F.3d at 1368 (quoting *Warrior & Gulf Navigation*, 363 U.S. at 582–83, 80 S.Ct. 1347). "The party contesting arbitrability bears the burden

of demonstrating how the language in the collective bargaining agreement excludes a particular dispute from arbitration." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir.1993). We are mindful that "[i]n labor contracts with arbitration clauses, the presumption of arbitrability is very strong," *Dennis L.Christensen Gen'l Bldg. Contractor v. S. Cal. Conf. of Carpenters*, 952 F.2d 1073, 1076 (9th Cir.1991), and that "doubts should be resolved in favor of coverage," *Warrior & Gulf Navigation*, 363 U.S. at 583, 80 S.Ct. 1347.

The plain language of the grievance procedure in the Orange County CBA, however, overcomes the strong presumption in favor of arbitrating labor disputes. The Orange County CBA grievance procedure refers only to employee-initiated grievances. To bring a grievance under the Orange County CBA, a party is required to proceed in three chronological steps.[2] The language of Steps One and Two of the grievance procedure describe only the Union's and the employees' duties in initiating

---

**2.** The grievance procedure in the Orange County CBA states in relevant part:

Grievances shall be taken up and processed in the following manner:

(A) *Step One:* Any employee having a grievance may first take his/her grievance up with his/her foreman, shop steward, or Union Representative. On request of the Union Representative, the Employer shall produce the payroll records that bear upon the grievance for examination by the Union Representative. In any event, an attempt to settle the grievance with an Employer Representative shall be made prior to proceeding to Step Two of this grievance procedure.

(B) *Step Two:* If the grievance is not settled in Step One within two (2) working days, then within five (5) working days thereafter, it shall be presented in writing through the Union to the Employer. A committee of an equal number of representatives of the Employer and the Union will meet within thirty (30) working days thereafter to settle the

grievance. If a decision is reached by this committee, it shall be final and binding upon all parties involved.

(C) *Step Three:* If the grievance is not settled within thirty (30) working days in Step Two, [from] the time it was presented in writing, either the Employer or the Union may, within ten (10) working days thereafter, request, in writing that the issue be arbitrated, provided that it involves a question of interpretation or application of this Agreement.... The decision of the arbitrator shall be final and binding on both parties; provided, however, that the power and authority of the arbitrator shall be limited to the question presented to him/her.... Further the arbitrator shall have no power to substitute his/her discretion for the Company's discretion in cases where the Company is given discretion by this agreement or by any supplementary agreement, as long as the Company's discretion is not arbitrary or capricious.

a grievance against Standard Concrete. ("An employee having a grievance may first take his/her grievance up with his/her foreman ..."); ("If the grievance is not settled in Step One within two working days ... it shall be presented in writing through the Union to the Employer."). To the extent Steps One and Two require employer action, they describe only how Standard Concrete is obligated to respond to an employee grievance ("the Employer shall produce the payroll records that bear upon the grievance").

Local 952 bases its argument that Standard Concrete must arbitrate its dispute with the Union on the opening clause of the grievance procedure and on Step Three. The opening clause, the Union argues, refers to the manner that "[g]rievances" shall be processed, and is not modified or limited to a particular party, i.e., an employee or Union. Step Three states, in relevant part: "If *the grievance* is not settled within thirty working days in Step Two, [from] the time it was presented in writing, *either the Employer or the Union may*, within ten (10) working days thereafter ... request the Federal Mediation and Conciliation Service to submit a list of arbitrators...."

Local 952's argument that these provisions require Standard Concrete to arbitrate its grievances is without merit.

Because Steps One and Two refer only to employee-initiated grievances, we cannot conclude that the opening clause and Step Three of the procedure indicate the parties' intent that Standard Concrete submit its grievances with the Union to arbitration. First, the opening clause requires a grieving party to follow the chronological steps of the grievance procedure. It is also clear from the language and structure of the grievance procedure that any grievance must go through the steps sequentially. The steps are labeled chronologically

as "Step One," "Step Two," and "Step Three." A party cannot reach Step Three without exhausting Steps One and Two; a grievant may only proceed to the next step of the grievance procedure *if* he or she is not able to resolve the grievance under the previous step. Thus, Step Three can not refer to the way a new grievance should be filed: it refers only to grievances that have gone through Steps One and Two.

We therefore affirm the district court's ruling that Standard Concrete was not obligated to arbitrate its dispute with Local 952. It is clear from the plain text of the Orange County CBA that the grievance clause only applies to employee grievances. *Cf. Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (holding that a CBA did not require an employer to arbitrate a dispute where the arbitration procedures in the CBA described only an employee grievance procedure and expressly limited the procedure to employee-initiated grievances).

## II.

We next consider Local 952's liability for damages under the CBA. Local 952 argues that the district court erred in holding that Local 952 violated the Orange County CBA by engaging in a sympathy strike. Local 952 argues that it cannot be held liable under the Orange County CBA because Local 952 did not clearly waive its right to take part in a sympathy strike. Further, according to Local 952, the district court incorrectly held that the members of the Orange County bargaining unit were not technically on a sympathy strike when some of its members refused to cross the Corona bargaining unit's picket lines. Local 952 points out that the district court was incorrect to hold that a bargaining unit does not engage in a sympathy strike when its members refuse to cross the picket line of another bargaining unit repre-

sented by the same Local union, even though the units are covered under separate CBAs. We reverse the district court's decision holding Local 952 liable for money damages under the Orange County CBA.

**A.**

■ Local 952 argues that it did not violate the Orange County CBA because the Agreement did not include a prohibition against sympathy strikes. To support its argument, Local 952 relies on *Children's Hospital Medical Center v. California Nurses Association*, 283 F.3d 1188, 1192 (9th Cir.2002), where this court held that a general no-strike clause does not waive union members' rights to respect a picket line. Local 952 argues that under *Children's Hospital*, the no-strike clause in the Orange County CBA did not bar it from engaging in a sympathy strike. In addition, Local 952 argues, there is evidence in the plain text of the CBA that it did not give up its right to engage in a sympathy strike. Standard Concrete argues that this case is distinguishable from *Children's Hospital* because Local 952 produced no evidence based on the parties' past practice and bargaining history to prove that the "no strike" clause did not waive Local 952's right to engage in a sympathy strike. We disagree with Standard Concrete, and hold that the no strike clause in the Orange County CBA did not constitute a sufficient "clear and express" waiver of Local 952's right to engage in a sympathy strike under *Children's Hospital.*

■ Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, guarantees workers and unions the right to engage in a sympathy strike, i.e., to refuse to cross the picket line of another bargaining unit that is on strike against its em-

ployer. *Oil, Chem. and Atomic Workers Int'l Union, Local 1–547 v. NLRB*, 842 F.2d 1141, 1143 (hereinafter *Local 1–547* ) (9th Cir.1988); *Int'l Bhd. of Elec. Workers, Local 387, AFL–CIO v. NLRB*, 788 F.2d 1412, 1414 (9th Cir.1986). The right to strike and sympathy strike may be waived in a CBA. To do so, the union must make a "clear and unmistakable" waiver in the CBA. *Children's Hosp.*, 283 F.3d at 1192; *Local 1–547*, 842 F.2d at 1143. We require a specific "clear and unmistakable" waiver of a Union's right to sympathy strike because:

> [I]f a Union is negotiating away employees' rights that are fundamental to the collective bargaining process, any proposed contract must unambiguously put those employees on notice of the waiver.

*Children's Hosp.*, 283 F.3d at 1192.

In *Children's Hospital* we made clear that "[a] general no-strike clause that does not specify whether sympathy strikes are included or excluded does not, simply by virtue of its incorporation in a collective bargaining agreement, constitute such a clear and unmistakable waiver [of sympathy strikes]." *Children's Hosp.*, 283 F.3d at 1192. We must "examine the relevant extrinsic evidence to determine if the parties intended that general [no strike] language to include sympathy strikes." *Id.* at 1194. The burden is on the "employer to show by clear and unmistakable evidence that a general waiver of the right to strike includes sympathy strikes." *Id.* at 1195. The court's analysis as to the scope of a no strike clause is guided by "the bargaining history, the context in which the contract was negotiated, the interpretation of the contract by the parties, and the conduct of the parties bearing upon its meaning." *Id.* (quoting *Arizona Public Serv.*, 788 F.2d at 1414).

In *Children's Hospital*, we considered whether the California Nurses Associa-

tion's ("Nurses Association") decision to participate in a sympathy strike breached the general no strike clause in its collective bargaining agreement ("CBA") with Children's Hospital. The Nurses Association gave notice to Children's Hospital that it was going to conduct a 24–hour sympathy strike to support the International Longshore and Warehouse Union, which had a primary labor dispute with the hospital. Children's Hospital brought suit against the Nurses Association, seeking a declaratory ruling that the Nurses Association was barred from participating in a sympathy strike under the general no strike clause in its CBA with the Nurses Association. We held that the general no strike clause in the CBA did not waive the Nurses Association's right to honor the picket line. We based our decision on (1) the Nurses Association's bargaining history with Children's Hospital, where the Nurses Association consistently rejected Children's Hospital's proposal for a broader no strike clause that expressly barred sympathy strikes, and (2) Children's Hospital's past practice of not objecting to the Nurses Association's participation in previous sympathy strikes. *Id.* at 1195–1997.

We find that *Children's Hospital* is controlling. There is evidence in the *express text* of the Orange County CBA that the parties did not intend to bar sympathy strikes when they agreed to a general no strike clause. Article IX, Section 1 of the Orange County CBA provides: "No employee shall be discharged or discriminated against because of his/her membership in the Union or Union activities, including his/her refusal to

cross a picket line approved by the Union."[3] If Standard Concrete intended the no strike clause to encompass a ban on sympathy strikes, it would not have agreed to safeguard the jobs of Local 952 members that refuse to cross a picket line.

Furthermore, Standard Concrete negotiated this clause with an awareness that the Orange County bargaining unit could participate in a sympathy strike with another bargaining unit. For over twenty years, Standard Concrete has had separate CBAs for its Orange County and Corona facilities. It was not until after the Orange County bargaining unit refused to cross the Corona bargaining unit's picket line that Standard Concrete negotiated a limitation in the Orange County CBA on Local 952's right to participate in a sympathy strike.

We conclude that Local 952 did not make a clear and unmistakable waiver of its members' right to refuse to cross the picket line of another union or bargaining unit of the same union.

**B.**

◼ Further, Local 952 argues that the district court also erred in holding that the Orange County bargaining unit did not take part in a "sympathy strike" when its members refused to cross the Corona bargaining unit's picket line. The district court held that the Orange County bargaining unit did not participate in a sympathy strike because Local 952 represents *both* bargaining units. Standard Concrete contends that the district court correctly

3. An arbitrator gave effect to this provision when Standard Concrete permanently replaced four Local 952 Orange County bargaining unit members who honored the Corona bargaining unit's picket lines. Local 952 submitted a grievance to dispute the dismissal of these four workers. In its grievance, Local

952 argued that Standard Concrete violated Article IX of the Orange County CBA by discharging the four Local 952 workers for not crossing the Corona unit's picket line. On September 25, 2000, an arbitrator ruled that Standard Concrete violated the CBA when it permanently replaced the employees.

held that a sympathy strike by a bargaining unit to support a bargaining unit of the same local union is not technically a sympathy strike. To support its argument, Standard Concrete relies on our decision *NLRB v. Southern California Edison Co.,* 646 F.2d 1352, 1363 (9th Cir.1981), where we stated: "Section 7 protects employees who engage in sympathy strikes in support of a lawful primary strike by a *sister union* [i.e., different union] of the same employer." (emphasis added).

A sympathy strike "ordinarily refers to a strike conducted by workers belonging to one bargaining unit in support of a primary strike that is conducted by workers belonging to another bargaining unit at the same plant or shop." *Children's Hosp.,* 283 F.3d at 1191 (footnote omitted). In a sympathy strike, members of one bargaining unit refuse to cross a picket line that is established by another bargaining unit that has a primary dispute with a common employer. "Sympathy strikes are a means by which workers can demonstrate their solidarity with their 'brothers and sisters' who are engaged in a primary strike." *Id.* at 1191–92.

We hold that the district court misapplied our holding in *Southern California Edison* when it read our decision to only allow a "sister union" to participate in a sympathy strike for another union. In fact, the Third Circuit in *Delaware Coca–Cola Bottling Co. v. General Teamster Local Union 326,* 624 F.2d 1182 (3d Cir. 1980), cited in *Southern California Edison,* upheld a bargaining unit's right under § 7 of the NLRA to honor the picket line of another bargaining unit represented by the same local union.

Standard Concrete states that our decision in *Children's Hospital* supports the district court's decision. But in that decision we stated: "[t]he two groups of workers [participating in the secondary and primary strike] are *usually* represented by different unions." *Children's Hosp.,* 283 F.3d at 1191 (emphasis added). We did not say that only sister unions were entitled to participate in sympathy strikes. To the contrary, our rationale for protecting sympathy strikes under § 7 applies with equal force where the primary strikers and secondary strikers are different units with different CBAs, represented by the same union:

> The primary strikers are seeking improved wages, benefits, and working conditions or are protesting unfair labor practices or other grievances. The sympathy strikers do not have a primary objective of their own, but seek to assist the primary strikers to achieve *their* goals.

*Id.* at 1191 (emphasis in the original). When the members of the Orange County bargaining unit engaged in a sympathy strike to protect the rights of the Corona bargaining unit, the Orange County bargaining unit did not have a primary objective of its own; it was acting to support the Corona bargaining unit in settling its contract dispute.

The language of § 7 also does not distinguish between sympathy strikers who are represented by the same union that represents the primary strikers and sympathy strikers who are represented by a different union that represents the primary strikers. Instead, § 7 categorically protects the rights of employees "to form, join or assist labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." 29 U.S.C. § 157. Because § 7 protects employees generally, we hold that § 7 safeguards the right of bargaining unit members to engage in a sympathy strike to support another bargaining unit engaging in a primary strike, even though the two

bargaining units are represented by the same local union.

On the basis of the foregoing, we hold that Local 952 and its Orange County bargaining unit engaged in a permissible sympathy strike and therefore did not violate the Orange County CBA. The district court's judgment in favor of Standard Concrete, and the award of damages and costs, are reversed.

### III.

Because we conclude that the district court erred and that Local 952 is thus not liable for damages, we need not address the other issues raised by the parties.

### CONCLUSION

Accordingly, the district court's decision is AFFIRMED in part and REVERSED in part.