**UNITED STEELWORKERS OF AMERICA, for itself and on behalf of Local 12943, Plaintiff–Appellant,**

v.

**The MEAD CORPORATION, FINE PAPER DIVISION, Defendant–Appellee.**

No. 93–5096.

United States Court of Appeals, Sixth Circuit.

Argued March 18, 1994.

Decided April 11, 1994.

Rudolph L. Milasich (argued and briefed), United Steelworkers of America, Pittsburgh, PA, Samuel H. Heldman, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, AL, for plaintiff-appellant.

William C. Bovender (argued and briefed), Hunter, Smith & Davis, Kingsport, TN, Stephen M. Darden (briefed), Hunter, Smith & Davis, Johnson City, TN, for defendant-appellee.

Before: MARTIN, RYAN, and SUHRHEINRICH, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

The United Steelworkers of America filed a grievance alleging that The Mead Corporation's retirement incentive program violated the collective bargaining agreement between the Union and the Company. The Union now appeals the district court's order finding the grievance not subject to arbitration and thus refusing to compel arbitration. For the following reasons, we reverse the judgment of the district court.

## I

The Mead Corporation operates a mill in Kingsport, Tennessee, the employees of which are represented by the United Steelworkers of America. On January 26, 1991, the Union and the Company entered into the collective bargaining agreement that governs this dispute. The agreement includes a promise by the Union not to strike, and establishes a grievance and arbitration procedure. In regard to the scope of arbitration, Article XIII, Section 3 provides:

> Only grievances charging that the Company has violated this Agreement and involving the interpretation of, or compliance with, this Agreement will be recognized, and such grievances to be recognized must be presented within thirty (30) days after occurrence. Wages and wage rates are a matter for negotiation only and shall not be subject to this procedure.

Also implicated in this dispute are the following five provisions of the agreement, which address recognition of the Union, man-

agement rights, seniority, retirement, and amendment of the agreement, respectively.

First, Article I provides that the "Company recognizes the Union as the exclusive representative for the employees of the Kingsport Mill."

Second, Article II provides that "[a]ll other rights not specifically nullified by this Agreement are retained by the Company."

Third, Section 2 of Article XIX, the article on seniority, essentially requires the Company in increasing and decreasing the work force to honor first the departmental seniority rights of employees within affected departments, and then the plant seniority rights of employees displaced from their departments because of low department seniority.

Fourth, Article XXV, Section 1 provides:

The Company agrees to maintain, during the term of this Agreement, a retirement plan as agreed upon with the Union. The terms and conditions of the agreed upon retirement plan are set forth in the document entitled the Mead Retirement Plan for Hourly Employees of the Kingsport Mill....

It is further agreed that the retirement benefits of the plan will not be reduced during the term of this Agreement.

Finally, Article XXVIII, the article on amendment, provides:

This Agreement is complete in writing and excludes all matters from further negotiation for the duration of this Agreement, whether or not previously mentioned, and except as specifically provided to the contrary herein. Further, this Agreement shall not be amended, changed, altered, or qualified, except by an instrument in writing duly signed by the parties signatory hereto.

In the summer of 1992, while suffering economic difficulties and after being advised by consultants that its maintenance work force was too large, the Company proposed to the Union a plan to offer cash bonuses to the Company's maintenance employees on the condition that they agreed to retire. After negotiations with the Union, the Company amended the proposal so as to offer smaller cash incentives on the same condition to non-maintenance employees as well. Unsatisfied with this arrangement, the Union filed a grievance alleging that the incentive program violated the collective bargaining agreement. The Company, however, refused to submit to arbitration on the ground that the grievance did not involve interpretation of the agreement, and indicated that it would begin offering the incentive bonuses, pursuant to its amended proposal, on October 1.

## II

On September 21, the Union brought suit pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, seeking to enjoin the Company's implementation of the incentive program pending arbitration of the Union's grievance. Following a hearing, the district court found that the retirement incentive program was not within the scope of the collective bargaining agreement, and therefore was not subject to the grievance and arbitration process. Accordingly, the court denied the Union's motion for preliminary injunctive relief.

The Union then moved for reconsideration of its motion, summary judgment on the issue of arbitrability of the grievance, and an order compelling arbitration. In a final order dated December 17, the district court noted initially that its role was limited to determining whether the arbitration provision of the agreement was susceptible of an interpretation that would make the grievance arbitrable. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). The present dispute, the court reasoned, involved a limited grievance procedure and an increased benefit—the retirement incentive bonus—not covered by the retirement plan agreed upon by the Union and the Company. As a result, the court again found the grievance not subject to the arbitration process, denied the Union's motion, and dismissed the case. This timely appeal followed.

## III

The Union contends that the district court erred in finding that the retirement incentive

bonus dispute was not arbitrable. Specifically, the Union identifies four different provisions of the agreement that potentially govern this dispute. First, the Union maintains that by implementing the retirement incentive program, the Company unilaterally introduced a new condition of employment. The introduction of this new condition, the Union argues, violated the article on amendment, which provides that the agreement is complete and shall not be amended except by an instrument signed by the parties. Second, the Union asserts that the program alters the retirement plan as agreed upon by the Union and Company, and thus violates the article on retirement. Third, because the Company offered the bonuses directly to the employees, the Union contends that the program violates the Company's promise to recognize the Union as the employees' sole bargaining representative. Finally, according to the Union, as the retirement incentive program is designed to enable the Company to avoid resorting to mandatory layoffs, the program also implicates the article on seniority, which requires the Company in reducing its work force to lay off the least senior workers first. The Union concludes that because resolution of its grievance requires interpretation of these provisions of the agreement, this dispute is within the scope of the arbitration process.

The Company responds that the district court properly ruled that a grievance concerning the retirement incentive bonus program does not involve interpretation of, or compliance with, the agreement, and thus is not covered by the arbitration process. In the alternative, the Company asserts that if its implementation of the retirement incentive program did give rise to an arbitrable grievance, such a grievance must arise from the Company's obligation to maintain a retirement plan as agreed upon with the Union. Article X, Section 10.1 of that retirement plan, the Company notes, provides that the "Company may amend the Plan at any time and to any extent," and thus arguably gives the Company the unilateral right to amend the plan notwithstanding the terms of the article on retirement. Similarly, the Company contends that because its right to offer a retirement incentive bonus is not "specifically nullified" by the collective bargaining agreement, the article on management rights also preserves the Company's right to make such an offer. According to the Company, therefore, because the Union could not prevail in the arbitration it seeks to compel, the district court did not err in dismissing the Union's suit.

## IV

■ The guiding principles for determining whether a grievance is arbitrable are well established: (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648–51, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986) (quoting *Warrior & Gulf Navigation*, 363 U.S. at 582–83, 80 S.Ct. at 1353). Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitrability "particularly applicable," and only an express provision excluding a particular grievance from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf Navigation*, 363 U.S. at 584–85, 80 S.Ct. at 1353–54); *see also International Union, UAW v. United Screw & Bolt Corp.*, 941 F.2d 466, 472–73 (6th Cir.1991) (finding that the employer had "not satisfied the requirement for forceful evidence to overcome the presumption that the grievances should be arbitrated").

■ Here, because the agreement between the Union and the Company contains an arbitration clause, we apply the presumption of arbitrability to the Union's grievance. We consider next whether this arbitration clause is the type of broad clause to which the presumption is particularly applicable. In *Communications Workers v. Michigan Bell Tel. Co.*, 820 F.2d 189, 193 (6th Cir. 1987), this Court deemed the presumption of arbitrability particularly applicable where an arbitration clause provides for "arbitration of any controversies regarding interpretation of the contract." *See also International Union*, 941 F.2d at 468, 472 (finding the presumption particularly applicable where the arbitration clause covered "matter[s] involving the interpretation or application of, or compliance with any of the terms of this Agreement"); *Local 670, United Rubber Workers v. International Union, United Rubber Workers*, 822 F.2d 613, 617 (6th Cir.1987) (finding the same where the agreement at issue subjected any unresolved grievance to arbitration, and defined a grievance as a dispute involving an allegation that the company had not complied with the agreement and "a question concerning the meaning, interpretation, scope, or application" of the agreement), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988). The arbitration clause at issue here likewise includes within its scope "grievances charging that the Company has violated this Agreement and involving the interpretation of, or compliance with, this Agreement." Accordingly, we find the presumption of arbitrability particularly applicable to this case, and, because the agreement does not contain an express provision excluding the grievance at issue from arbitration, we will not exclude this grievance from the arbitration process absent forceful evidence of a purpose to do so.

■ Under the terms of the agreement's article on retirement, the Company promises to maintain a "retirement plan as agreed upon with the Union," and promises that "the retirement benefits of the plan will not be reduced during the term of this agreement." According to the Union, the first of these promises must mean something more than simply that the Company will not reduce the benefits provided by the plan. If not, the Union argues, the second promise would merely restate the first. Without considering the underlying merits of the Union's claim, we note that the retirement article is certainly susceptible of the Union's proposed reading. Thus, regardless of whether the retirement incentive program reduces the employees' retirement benefits, the Company's implementation of the program arguably constitutes a failure to maintain the agreed-upon retirement plan. As the Seventh Circuit has recognized under similar circumstances, resolution of this issue would require a court to construe the term "maintain" and would lead to a consideration of the merits of the dispute. *See Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*, 837 F.2d 782, 786 (7th Cir.1988) (finding arbitrable the union's claim that the company, by offering additional retirement benefits to non-union employees, violated a promise to maintain an agreed-upon retirement plan with the union). We conclude, therefore, that the Union has made a claim that is governed on its face by the agreement, and thus that the resolution of this grievance is within "the greater institutional competence" of the arbitrator and submission of this dispute to arbitration "'best accords with the parties' presumed objectives in pursuing collective bargaining.'" *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371–72, 104 S.Ct. 1844, 1848–49, 80 L.Ed.2d 366 (1984)).

Because the Company failed to produce forceful evidence of a purpose to exclude the Union's grievance from arbitration, we believe that the district court erred in finding the grievance not subject to the arbitration process and refusing to compel arbitration of this dispute. Notably, we have determined from considering only the arbitration clause and the article on retirement that the Union's grievance is governed by the agreement. As a result, we need not address the Union's further claims that the grievance is also governed on its face by the articles on amendment of the agreement and recognition of the Union, and that the grievance implicates the article on seniority.

Finally, the Company's alternative, contractual authority arguments are wholly without merit. According to the Company, even if the Union's grievance over the bonuses is arbitrable, the Company should not be compelled to arbitrate because the Union could not prevail in such arbitration. We disagree. The Supreme Court has explicitly stated that the courts " 'have no business weighing the merits of the grievance.' " *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). Whether the Company or the Union will prevail before the arbitrator is irrelevant to our determination of the dispute's arbitrability, as the parties agreed "to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Id.* (quoting *American Mfg. Co.,* 363 U.S. at 568, 80 S.Ct. at 1346).

## V

For the foregoing reasons, the judgment of the district court is reversed.