96 F.3d 1449
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
VEMCO, INC., a Michigan corporation,
Plaintiff/Counter-defendant-Appellee,
v.
FLAKT, INC., a Delaware corporation, and Federal Insurance
Company, a New Jersey corporation,
Defendants/Counter-plaintiffs-Appellants,
James A. Schutz, et al., Thomas J. Kelly, in his capacity as
individual collateral agent on behalf of The New York Life
Insurance Company and Aid Association for Lutherans; New
York Life Insurance Company, a New York corporation; Aid
Association for Lutherans, a fraternal benefit society
organized under the laws of the State of Wisconsin,
Counter-defendants.
 No. 94-1016, 94-1506.
 United States Court of Appeals, Sixth Circuit.
 Sept. 05, 1996.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 88-40331; Stewart A. Newblatt, Judge.
 E.D.Mich.
 VACATED.
 Before: KRUPANSKY, RYAN, and NORRIS, Circuit Judges.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 In this diversity action, defendants Flakt, Inc. ("defendant") and Federal Insurance Company ("Federal") appeals the district court order denying this motion to vacate an arbitration award in favor of Vemco, Inc. ("plaintiff"), pursuant to § 10(a)(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1-16 (West 1970 & Supp.1996). For the following reasons, we reverse the decision of the district court and vacate the arbitration award.
 
 I. FACTS
 
 2
 Plaintiff is an autoparts manufacturer that contracted with defendant to design and build a paint finishing system for plaintiff's new-automobile parts plant. Several written agreements memorialized the parties' deal, and each was executed on the same day in November of 1987 and back-dated to July of 1987. Two of the agreements are central to this appeal. In the Cost-Plus agreement, defendant assumed "total responsibility for all phases of the design, fabrication, installation, start up, testing, and completion of the paint finishing system." This sixty-one page agreement contained a limited warranty provision, a provision protecting defendant from claims for consequential damages, and four arbitration clauses. The two-page Guaranteed Maximum Cost agreement supplemented the Cost-Plus agreement an established a maximum cost of $15 million for the "originally-quoted system." The parties also agreed that Federal would issue a performance bond to guarantee defendant's work.
 
 
 3
 By June of 1988, the project was in serious trouble. Defendant asserted the total project cost had risen to $19 million due to plaintiff's numerous "Owner Change Requests." Plaintiff asserted that virtually all the change requests were not changes at all, but rather were required to meet the contract specifications of the "originally-quoted system." Plaintiff also claimed that defendant was responsible for construction problems and delays that put the project behind schedule and threatened plaintiff's ability to fulfill its obligations to supply auto parts to General Motors.
 
 
 4
 Plaintiff subsequently submitted to defendant a Demand for Arbitration setting forth the following issues which it sought to have resolved by arbitration: the amount due on the contract; breach of contract; construction defects; roofing problems; warranty claims; and patent and trade secret matters. Defendant refused the demand for arbitration, and plaintiff responded by filing suit in district court seeking to compel arbitration of the above issues and also seeking damages for tortious interference with business relationships and slander of title. Defendant then sought a stay of arbitration and entered counter-claims for breach of contract, unjust enrichment, fraudulent misrepresentation, breach of implied warranty, foreclosure of construction lien, and slander.
 
 
 5
 In a subsequent motion requesting determination of arbitrable disputes, defendant argued that only narrow issues were subject to arbitration under the parties' agreement. The district court agreed with plaintiff, however, that "the arbitration provisions cover all disputes which arise from the contract." The district court found nonarbitrable only the issues of slander and tortious interference with business.
 
 
 6
 The parties proceeded to argue their claims before a panel of arbitrators, and in a one-page order containing no indication of the panel's reasoning, the arbitrators issued a "net award" in favor of plaintiff for just over $3 million. From the district court's order confirming the arbitration award and rejecting defendant's motion to vacate, this appeal followed.
 
 II. DISCUSSION
 
 7
 Section 2 of the Federal Arbitration Act instructs courts that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable." Further,
 
 
 8
 arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.... This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.
 
 
 9
 Roney & Co. v. Kassab, 981 F.2d 894, 897 (1992) (quoting AT & T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 648-49 (1986)). The duty to arbitrate is limited by the scope of the arbitration clause contained in the parties' agreement, and interpretation of the scope of an arbitration clause is a matter of law reviewed de novo by this court. See Wiepking v. Prudential-Bache Sec., Inc., 940 F.2d 996, 998 (6th Cir.1991). When disputes the parties did not agree to arbitrate are resolved by a panel of arbitrators, the panel has exceeded its power, and we may vacate the award pursuant to 9 U.S.C. § 10(a)(4).
 
 
 10
 In this case, defendant asserts that the district court erred in interpreting the four arbitration clauses contained in the parties' agreements as covering "all disputes which arise from the contract" and compelling defendant to arbitrate nonarbitrable disputes. Before we can reach this issue, however, we must first address defendant's argument that whatever the scope of the arbitration clauses, only disputes arising out of the Cost-Plus agreement can be submitted to arbitration.
 
 
 11
 Defendant contends that the several agreements executed by the parties were separate contracts, and the arbitration clauses are found only in the Cost-Plus agreement. We note, however, that the Cost-Plus agreement and the Guaranteed Maximum Cost agreement were executed on the same day and by the same people, and both were back-dated to the same effective date. In addition, the Guaranteed Maximum Cost agreement speaks of "this project" and the "main contract," an obvious reference to the more substantial Cost-Plus agreement.
 
 
 12
 "When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago v. Kaplan, 514 U.S. ----, 115 S.Ct. 1920, 1924 (1995). Michigan law governs the agreements at issue here. In Sawyer v. Arum, 690 F.2d 590, 592 n. 1 (6th Cir.1982), this court stated the general rule in Michigan that "in the absence of anything to indicate a contrary interpretation, instruments executed at the same time by the same parties, for the same purpose and in the course of the same transaction will be read together, it being said that they are, in the eye of the law, one instrument." As each element of this test is met under the facts of this case, and because defendant offers no evidence other than a conclusory statement that the agreements were intended to be separate agreements, we construe the agreements as one contract. Therefore, the arbitration clauses contained in the Cost-Plus agreement apply to the Guaranteed Maximum Cost agreement, as well as to the other agreements entered into by the parties concerning the project.
 
 
 13
 Returning now to the issue on the scope of the arbitration clauses, plaintiff argues that the parties agreed to submit all contract issues to arbitration. Defendant responds that the parties agreed only to submit certain narrow issues to arbitration. It argues that the district court's order permitted the arbitrators to resolve issues of contract interpretation, and that as a result the arbitrators denied defendant the protection of the contract's consequential damages provision and obligated it to assume the costs of plaintiff's numerous Owner's Change Requests.
 
 
 14
 Several principles guide the determination of which disputes are arbitrable. The general rule is that a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration. United Steelworkers of America v. Mead Corp., 21 F.3d 128, 131 (6th Cir.1994). Where the contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. (quoting AT & T Technologies, Inc., 475 U.S. at 650). Where the arbitration clause is broad, only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators. Id.
 
 
 15
 The parties' agreement contains four arbitration clauses, three of which are very narrow in focus. Section E, "Scope of the Work-Procurement," sends to arbitration disputes over bid prices when defendant is the sole-bidder. Section E, "Instructions to Bidders," provides that disputes over what is included in a bid price are arbitrable. Section I, "Project Price," submits to arbitration disputes over costs for modifications that fall outside the scope of the project. These three clauses are narrow in focus, and "it may be said with positive assurance that the arbitration clause[§ are] not susceptible of an interpretation that covers" all issues arising under the contract to build the paint finishing plant.
 
 
 16
 Paragraph 26 of the General Conditions of the Cost-Plus agreement contains the agreement's fourth arbitration clause and reads in pertinent part:
 
 
 17
 Any questions in dispute arising from these Drawings or Specifications or the progress of the work incapable of being promptly settled by Vemco and Flakt shall be submitted to arbitration....
 
 
 18
 Plaintiff argues that this is a broad arbitration clause, and because there are no provisions excluding particular disputes from its sweep, the clause covers any disputes arising from the contract. We disagree. We have consistently construed as broad those clauses which send to arbitration virtually all controversies arising under an agreement; paragraph 26 does not purport to have such a wide sweep. E.g., Mead Corp., 21 F.3d at 132 (providing for arbitration of "grievances charging that the Company has violated this Agreement and involving the interpretation of, or compliance with, this Agreement"); Local 670 v. International, 822 F.2d 613, 617 (6th Cir.1987), cert. denied, 484 U.S. 1019 (1988) (sending to arbitration questions "concerning the meaning, interpretation, scope, or application" of the parties' agreement); Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 160 (6th Cir.1983) (providing that "[a]ny controversy or claim arising out of this Agreement ... shall be determined by arbitration...."). Nor is the parties' agreement broad like the American Arbitration Association's standard arbitration clause which provides, "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration." Paragraph 26 is not susceptible to an interpretation that it covers all disputes arising under the contract.
 
 
 19
 In sum, although the parties' agreement contains several arbitration clauses, none is so broad as to support the construction urged by plaintiff, i.e., that the parties agreed to submit to arbitration all of their disputes. Surely these clauses would not support requiring arbitration of disputes over the agreement's requirement that the parties enter into a separate trade secret agreement, that defendant pay any and all relevant royalty fees, or that defendant procure adequate workers' compensation insurance.
 
 
 20
 We hesitate, however, to expressly delineate those disputes that are arbitrable because discerning the intention of the parties with respect to the scope of the arbitration clauses requires factual findings the district court has yet to make. For example, whether the parties intended paragraph 26's reference to "progress of work" to include quality of work as well as pace of work cannot be determined without further factual findings. Nevertheless, we agree with defendant that two issues in particular are not arbitrable. The first concerns plaintiff's argument that it agreed to limit defendant's liability for consequential damages in exchange for a limited warranty, and that if defendant violated the warranty, the consequential damages provision dropped from the contract. The second concerns plaintiff's argument that Owner's Change Requests fall within the $15 million cost cap. These issues require examination of the terms and conditions of the parties' agreement, and, its scope; none of the arbitration clauses is broad enough to authorize an arbitration panel to perform this function. These are issues the district court should have decided.
 
 
 21
 This case has a long history, and we recognize that a decision to vacate the arbitration award will only add to that history. Unfortunately, the record indicates that the arbitrators likely resolved issues the parties did not agree to arbitrate, and that this resulted in an award for plaintiff that consisted of significant damages the arbitrators were without authority to assess against defendant.[1] For this reason, we reluctantly vacate the arbitration award, and we remand to the district court for a determination of arbitrable issues.
 
 
 22
 Finally, and contrary to plaintiff's assertions, defendant and its surety Federal did not waive their right to appeal by arguing their claims before the arbitration panel. Defendant and Federal requested a determination of arbitrable issues in the district court. They then abided by the district court's determination that all but two issues were arbitrable. "This is not a situation where [parties] consented to arbitration and are now seeking a second bite at the apple." Wiepking, 940 F.2d at 999.
 
 III. CONCLUSION
 
 23
 The arbitration award is vacated and this case is remanded to the district court for proceedings consistent with this opinion.
 
 
 
 [1]
 We are particularly concerned with the parties's dispute over the application of the consequential damages provision. In the Conclusions of Law plaintiff submitted to the arbitration panel, plaintiff stated that it incurred $2,611,665 in "out-of-pocket costs" and $3,393,560 in "excess plant costs" due to defendant's behavior. Plaintiff then argued that because defendant failed to live up to its warranty obligation, "all limitations on consequential damages are barred." Finally, plaintiff stated to the panel: "To the extent that damages for Vemco's excess plant costs are deemed to be consequential, the contractual limitation of damages in this case does not preclude recovery of those damages." (emphasis added). Hence, plaintiff included consequential damages in estimating its "excess plant costs," and it is likely the panel award plaintiff consequential damages in its "net award" of $3,111,422.44 because this amount exceeds the $2.6 million plaintiff claimed as out-of-pocket costs