*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

INTERNATIONAL ASSOCIATION OF
MACHINISTS & AEROSPACE WORKERS,
AFL-CIO, LOCAL LODGE 1943,
　　　　　　　　　*Plaintiff-Appellee,*

*v.*

AK STEEL CORPORATION,
　　　　　　　　　*Defendant-Appellant.*

No. 09-3425

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00294—Herman J. Weber, District Judge.

Argued: January 12, 2010

Decided and Filed: August 12, 2010

Before: MARTIN and WHITE, Circuit Judges; ZOUHARY, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** George E. Yund, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellant. Robert H. Mitchell, MANLEY BURKE, LPA, Cincinnati, Ohio, for Appellee. **ON BRIEF:** George E. Yund, Catherine Ann Reed, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellant. Robert H. Mitchell, Emily T. Supinger, MANLEY BURKE, LPA, Cincinnati, Ohio, for Appellee.

　　　　MARTIN, J., delivered the opinion of the court, in which ZOUHARY, D. J., joined. WHITE, J. (pp. 10-13), delivered a separate dissenting opinion.

———————————

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.  The question in this case is who decides who decides.  The district court granted appellee International Association of Machinists and Aerospace Workers, AFL-CIO, Local Lodge 1943's motion for summary judgment, in which the Union sought to compel the arbitration of the question of whether ninety-three grievances against appellant AK Steel Corporation were substantively arbitrable under their agreement.  The Company argues that the district court erred because the parties did not "clearly and unmistakably" state their intent to submit to an arbitrator the question of the substantive arbitrability of the grievances.

The Company and the Union entered into a Return To Work Agreement ("Transition Agreement") that did not provide for arbitration of grievances except for certain claims arising during the Transition Period, to be followed by a long-term 2007 Collective Bargaining Agreement ("2007 Agreement") with a more expansive grievance and arbitration procedure.  The Transition Agreement governs grievances which arise during the Transition Period and are based on violations of the Transition Agreement. The Transition Agreement did not include a "clear and unmistakable" provision that the substantive arbitrability of the Union's grievances would be determined by an arbitrator. Instead, the Transition Agreement explicitly exempted the Transition Agreement from the 2007 Agreement grievance and arbitration procedures, which does clearly state than an arbitrator would determine the question of substantive arbitrability of claims arising under that 2007 Agreement.  Thus, the issue of substantive arbitrability of grievances arising under the Transition Agreement, as well as the antecedent question of whether a grievance arises under the Transition Agreement, must be determined by a court.

We therefore **REVERSE** the district court's order and **REMAND** the case to determine whether each grievance is governed by the Transition Agreement or the 2007

Agreement and to determine the substantive arbitrability of those grievances governed by the Transition Agreement.

## I.

The Company operates a steel-making facility in Middletown, Ohio, known as the Middletown Works. The Union represents a bargaining unit consisting of production and maintenance workers at the Middletown Works. This unit was previously represented by the Armco Employees Independent Federation, Inc. The Company and Armco were parties to a collective bargaining agreement, the 1999 Agreement, which was effective from November 1, 1999 until February 28, 2006. The 1999 Agreement provided that, to determine issues of procedural and substantive arbitrability,

> If any question arises as to whether said dispute is or is not a proper grievance within the meaning of these provisions, the question may be reserved throughout the grievance procedure and determined, if necessary by the arbitrator.

Article VII, Section B(1).[1]  The Agreement further provided that

> Either party to the Agreement shall have the right to refer to an impartial arbitrator any grievance (including the determination of the question under Section B, Paragraph 1, as to whether a particular dispute is or is not a proper grievance) . . . .

Article VII, Section F(1).[2]  The Company and Armco negotiated for a successor agreement, but were unable to do so prior to the expiration of the 1999 Agreement in 2006.

---

[1]Substantive arbitrability is whether an issue is within the scope of an agreement's arbitration clause and must be submitted to arbitration. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 552 (1964). Procedural arbitrability is whether the submission of the grievance that is subject to arbitration followed the proper procedures, including timeliness, to qualify for arbitration. *See id.* at 556. While procedural arbitrability is generally determined by the arbitrator unless the parties provide otherwise, substantive arbitrability is generally determined by the court unless the parties provide otherwise. *See id.* at 558.

[2]The parties do not dispute that, under this contract provision in the 1999 Agreement, substantive arbitrability can be reserved by either party and taken to the arbitrator for resolution.

Upon the expiration of the 1999 Agreement, the Company commenced a lockout that lasted approximately one year, during which Armco affiliated with the International Association of Machinists and Aerospace Workers, AFL-CIO, which became the new representative for the bargaining unit. The Company continued negotiations with the Union during the lockout and the parties reached a tentative decision upon a new Agreement on February 28, 2007. The Agreement was ratified and became effective on March 15, 2007. The 2007 Agreement contained language relating to grievance procedures and substantive arbitrability of issues that was virtually identical to that included in Article VII, Sections B(1) and F(1) as reproduced above.

As part of the new 2007 Agreement, however, the parties also negotiated and entered into the Transition Agreement, which was intended to provide for the orderly transfer of work upon the return of employees to work and ramp-up of production after the lockout. The parties tentatively agreed to the Transition Agreement on February 28th and it was ratified on March 15th, along with the 2007 Agreement. The Transition Agreement established a six-month Transition Period, from March 15th through September 15th, during which the Transition Agreement would govern. Under Section K(3) of the Transition Agreement, "the terms and conditions of this Agreement take precedence over the 2007 Labor Agreement during the Transition Period. For example, the forty (40) hour work opportunity of the Employment Security Plan is not applicable during the Transition Period[.]" Section L of the Transition Agreement provided that:

> All matters covered by this Agreement [the Transition Agreement] or other matters that occur during the Transition Period shall not be subject to challenge under the grievance and arbitration procedure, or otherwise, except for the following specifically identified issues . . . .

These narrow types of issues included: (1) whether an employee "discharged from employment for failure of Alcohol and Substance Abuse Testing" or for Work Stoppage Misconduct had tested positive or committed an act of work stoppage; (2) "whether the disciplinary suspension or disciplinary discharge of an employee following return to work was with just cause and due consideration"; (3) "whether the employee was paid

the correct standard hourly wage"; and (4) "whether the employee was properly determined ineligible for healthcare coverage". The Transition Agreement did not contain its own grievance and arbitration procedure.

The Union filed ninety-three separate grievances[3] against the Company that the Company argues pertain to events arising during the Transition Period or under the Transition Agreement and are, thus, governed by the Transition Agreement and is arbitration provisions. The Company denied each grievance and refused to submit the disputes to arbitration, arguing that none of the disputes was substantively arbitrable because it either arose under the terms of the Transition Agreement or occurred during the Transition Period. For each grievance, the Company issued a "Step II" grievance answer asserting that the grievance was "not arbitrable" and that it would not process the grievance further unless its position should "be determined erroneous by a final, non-appealable order of a court of competent jurisdiction."

The Union then filed this action in district court pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking an order to compel the Company to arbitrate the substantive arbitrability of the ninety-three grievances, as well as an award of attorney fees for the Company's alleged bad faith refusal to submit these grievances to arbitration. The Union argued that the Transition Agreement was a part of the 2007 Agreement, which included a clear and unmistakable provision that an arbitrator, and not a court, will determine both substantive and procedural questions of arbitrability.[4]

The Company responded by arguing that the Transition Agreement explicitly takes precedence over the 2007 Agreement during the Transition Period and "clearly and unmistakably" states that matters covered by the Transition Agreement or other matters occurring during the Transition Period shall not be subject to challenge under the 2007

---

[3]While the Union originally filed ninety-four grievances, the Union withdrew one of the grievances based on individual seniority after this litigation was initiated.

[4]It is undisputed that the parties clearly and unmistakably consented to having an arbitrator determine the question of substantive arbitrability of claims arising under the 2007 Agreement.

Agreement grievance and arbitration procedure. The Company argued that, because each of the ninety-three grievances arose during the Transition Period or under the Transition Agreement, the issue of their substantive arbitrability must be determined by a court rather than by an arbitrator because the Transition Agreement is silent on that issue.

The district court granted summary judgment to the Union, ordering the parties to submit the question of the substantive arbitrability of the grievances to an arbitrator. The district court denied the Union's request for attorney fees, finding that the Company had not acted in bad faith. The Company timely appealed.

## II.

"We review de novo a district court's decisions regarding . . . the arbitrability of a particular dispute." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000) (citing *Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1170 (6th Cir. 1987) (stating that district court's finding that a contract exists is subject to de novo review)); *M&C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1037 (6th Cir. 1998) ("A determination of the arbitrability of a dispute is subject to de novo review.")). We also review de novo a district court's decision to grant a motion for summary judgment. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) (citing *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997)).

## III.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (citations omitted). "The guiding principles for determining whether a grievance is arbitrable are well established: (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a

duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *United Steelworkers of Amer. v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994) (citing *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648-51 (1986) (quoting *United Steelworkers of Amer. v. Warrior & Gulf Navigation*, 363 U.S. 574, 582-83 (1960))). "Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Mead Corp.*, 21 F.3d at 131 (citing *AT&T Techs.*, 475 U.S. at 650 (quoting *Warrior & Gulf Navigation*, 363 U.S. at 584-85)).

Our role is thus limited to determining whether the substantive arbitrability of the ninety-three grievances should be determined by a court or by an arbitrator rather than whether the grievances themselves are arbitrable. *AT&T Techs.*, 475 U.S. at 651. As previously noted, Section L of the Transition Agreement provides that:

> All matters covered by this Agreement [the Transition Agreement] or other matters that occur during the Transition Period shall not be subject to challenge under the grievance and arbitration procedure, or otherwise, except for the following specifically identified issues . . . .

Here, the Company argues that the district court erred in finding that the Transition Agreement included a clear and unmistakable expression of intent to arbitrate the substantive arbitrability of the Union's grievances. The district court's reasoning, agreeing with that of the Union, was as follows: (1) the Transition Agreement was part of the 2007 Agreement; (2) the Transition Agreement did not include its own procedures for grievance and arbitration, and, indeed, referred to them as governing in some of the

cases in which arbitration would be permitted; thus, (3) the Transition Agreement incorporated those procedures. It found that the 2007 Agreement vested an arbitrator with the authority to determine issues of substantive arbitrability. Therefore, the district court determined that, because the Union and the Company had agreed to have an arbitrator determine the substantive arbitrability of grievances with regard to issues arising under the 2007 Agreement, they had necessarily agreed to those procedures, despite the mandate that claims arising under the Transition Agreement were not subject to the procedures of the 2007 Agreement. By doing so, the district court erred.

The Transition Agreement and the 2007 Agreement must be read together. The Company conceded as much at oral argument by stating that the Transition Agreement is "incorporated" within the 2007 Agreement. The agreements were ratified together and both took effect on March 15, 2007. The Transition Agreement also cites and incorporates terms of the 2007 Agreement in a number of sections. For example, in Section G, the re-issuance of safety shoes "will be addressed in accordance with Article XXIV of the 2007 Labor Agreement." Additionally, under Section K(3) of the Transition Agreement, "the terms and conditions of this Agreement take precedence over the 2007 Labor Agreement during the Transition Period." Thus, where the terms of the Transition Agreement are more restrictive, those terms trump the 2007 Agreement.

The Transition Agreement does not provide, in "clear and unmistakable" language, for an arbitrator to decide substantive arbitrability. *First Options*, 514 U.S. at 943. Instead, the Transition Agreement specifically states that issues arising under the Transition Agreement or during "the Transition Period shall *not* be subject to challenge under the grievance and arbitration procedure, or otherwise, except for the following specifically identified issues . . . ." Transition Agreement Section L (emphasis added).[5]

---

[5]While the Union argues that the Company pre-supposes that the grievances are not substantively arbitrable, this is a misreading of the Company's position. The Company argues that the grievances arise under the Transition Agreement or during the Transition Period and are thus bound by the arbitration rules found in the Transition Agreement rather than by the 2007 Agreement. While the Company believes that the grievances are not substantively arbitrable because it believes that the grievances do not fit within one of the exceptions to the Transition Agreement's provision prohibiting arbitration, this does not mean that the Company's argument is based on the grievances' substantive arbitrability. Rather, the grievances arise under the Transition Agreement and are thus governed by its procedures.

The Transition Agreement explicitly excludes nearly all claims from the grievance and arbitration procedures outlined in the 2007 Agreement. This demonstrates the parties' intent not to be bound by these procedures (including the procedure for deciding substantive arbitrability) for claims arising under the Transition Agreement or during the Transition Period.

Thus, the district court erred in finding that the Transition Agreement required that the question of substantive arbitrability be submitted to an arbitrator. Additionally, as the contract is unclear on the matter, it is similarly for a court to determine whether the grievances at issue are subject to the Transition Agreement or the 2007 Agreement.

**IV.**

For the foregoing reasons, we **REVERSE** the district court's order and **REMAND** the case to determine first whether the grievances are governed by the Transition Agreement or the 2007 Agreement and then to determine the substantive arbitrability of those grievances governed by the Transition Agreement. The court must first determine if a grievance is governed by the Transition Agreement or by the 2007 Agreement. If a grievance is found to be governed by the 2007 Agreement, that grievance must be sent to an arbitrator. If a grievance is found to be governed by the Transition Agreement, the court will go on to decide the grievance.

---------------------

## DISSENT

---------------------

HELENE N. WHITE, Circuit Judge, dissenting. I respectfully dissent. I view this case somewhat differently than does the majority, and I would affirm the district court.

I do not see this case as presenting the straight-forward question "who decides who decides" in the context of an agreement that is silent on the issue. Rather, as noted by the district court, there are two agreements the enforcement of which are implicated by this decision.

I agree with the majority, as well as the district court, that the two agreements must be read together. The district court observed that the Transition Agreement provides that certain matters are subject to challenge under the grievance and arbitration procedure and certain matters are not, but the Transition Agreement sets forth no arbitration and grievance procedure. The court concluded that "the grievance and arbitration procedure to which the RTW [Transition Agreement] refers is that contained in the parties' CBA [the 2007 Agreement]." This is clearly correct.

The court then reasoned that because the grievance and arbitration procedure of the 2007 Agreement is the controlling procedure for grievance and arbitration—even under the Transition Agreement because no other procedure was invoked or contemplated by the Transition Agreement, although the Transition Agreement declared some matters subject to challenge under the grievance and arbitration procedure—the court should look to the procedure set forth in the 2007 Agreement to determine who should decide whether the 93 grievances are arbitrable under the 2007 Agreement or not arbitrable under the Transition Agreement. It is undisputed that the 2007 Agreement unambiguously commits such questions to the arbitrator, and thus the district court determined that the arbitrator should decide whether the grievances are arbitrable. I find no error in this analysis.

The language of the Transition Agreement supports the district court's conclusion. The Agreement states that certain matters "shall not be *subject to challenge under* the grievance and arbitration procedure, or otherwise." It does not state that the matters shall not be *subject to* the grievance and arbitration procedure. In stating that the matters are not subject to challenge under the procedure, the Agreement focuses on the substantive arbitrability of the matter, rather than the procedure for determining the substantive arbitrability. Stated differently, a matter that is not subject to challenge under the procedure is a matter that cannot be challenged through the grievance and arbitration procedure, but, as with all matters as to which arbitration is demanded, the arbitrator is confided with the duty to declare that the grievance and arbitration procedure cannot be invoked to challenge the matter. In contrast, a matter that is not subject to the grievance and arbitration procedure is one that is simply not subject to the procedure at all.

Further, as ineluctably true as the majority's assertion that the Transition Agreement explicitly exempted from challenge under the grievance and arbitration procedure all matters covered by the Transition Agreement or arising during the Transition Period except certain specified issues, is the assertion that grievances not covered by the Transition Agreement and not arising during the six-month period are covered by the 2007 Agreement, which explicitly commits the question of arbitrability to an arbitrator. If the grievances fall into the latter category, allowing a court to decide the question of arbitrability would violate the parties' agreement.

AK Steel asserts that the grievances arise under the Transition Agreement, and the majority opinion in effect assumes that this is an accurate characterization. The Union, however, argues that the grievances arise under the 2007 Agreement. Thus, in the instant case, there is a conflict between the second principle identified by the majority—"unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination"—and the fourth principle identified by the majority—"where the agreement contains an arbitration clause, the court should

apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *United Steelworkers of Amer. v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994).

Focusing exclusively on the second principle would lead to the conclusion that because the Transition Agreement does not "unmistakably provide" that the question of arbitrability is for the arbitrator, the question is one for the courts; however, focusing exclusively on the fourth principle would lead to the conclusion that because the 2007 Agreement clearly provides that the arbitrator should decide whether a grievance is arbitrable, the question is one for the arbitrator.

The Union's district court complaint asserts that it presented AK Steel with 93 grievances alleging that AK Steel violated specific terms of the 2007 Agreement, and that each grievance "raised a claim which upon its face and as presented fell within the scope of the grievance and arbitration provisions of the CBA." The 2007 Agreement provides that the arbitrability of such claims will be determined by an arbitrator. If, indeed, the grievances arise under the 2007 Agreement rather than the Transition Agreement, the majority decision will have the effect of giving the Transition Agreement precedence over the 2007 Agreement not just during the Transition Period, but also for the succeeding period, in direct violation of both the Transition Agreement and the 2007 Agreement.

In short, under the majority decision, AK Steel could assert that any grievance concerns a matter that is covered by the Transition Agreement or that occurred during the Transition Period, and thereby deprive the Union of the contractual right to have an arbitrator decide whether the grievance is arbitrable; or, under the district court decision, the Union can assert that a grievance arises under the 2007 Agreement, and force arbitration of the arbitrability question, even though the claim may not be arbitrable.

The district court determined that the second alternative is most consistent with the governing law and the parties' written agreements.  I agree and would affirm.