NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0074n.06

Case Nos. 22-3148/3377

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Feb 06, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant (22-3148), | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee (22-3377), | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| TRAFFIC TECH, INC.; NICKOLAS J. DUGGER., | ) | |
| | ) | |
| Defendants-Appellees (22-3148) | ) | |
| Defendants-Appellants (22-3377). | ) | O P I N I O N |
| | ) | |

BEFORE: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

COLE, Circuit Judge. These appeals arise from two distinct orders in an ongoing case between two logistics companies, Total Quality Logistics, LLC ("TQL") and Traffic Tech, Inc., and one individual who worked for each company for a time, Nickolas Dugger. First, TQL appeals from the district court's denial of its motion to compel arbitration on an equitable defense raised by Dugger. Second, Dugger and Traffic Tech appeal an April 2022 order ("April Order"), which extended the terms of a temporary restraining order (TRO). The district court correctly determined that Dugger's defense is not arbitrable under the relevant agreement, and so we affirm its denial of TQL's motion to compel arbitration. But because the district court abused its discretion in extending the terms of the TRO and declaring it "tantamount" to a preliminary injunction, we reverse the April Order, vacate the preliminary injunction, and remand for consideration of Dugger and Traffic Tech's damages.

I. BACKGROUND

**A. Facts**

In the course of his employment, TQL required Dugger to sign two employment-related agreements. The first agreement, entitled "Confidentiality Agreement and Restrictive Covenant," reads, in relevant part:

> During employment with TQL, and for a period of one (1) year immediately following termination of Employee's employment, whether voluntarily or involuntarily, . . . Employee shall not . . . contact, solicit or accept business from, render any services to, give assistance to, or accept any compensation from any Customer or customer prospect of TQL.
>
> Further, Employee hereby agrees that Employee shall not, directly or indirectly, enter into, participate in, consult with, or engage in, any business in competition with the business of TQL . . . for a period of one (1) year after the date of the termination of Employee's employment with TQL.

(Compl., Ex. A, R. 3-1, PageID 138 (hereinafter "Noncompete Agreement").)

The second agreement, which TQL calls a "Dispute Resolution and Arbitration Agreement," provides, in relevant part:

> The Parties agree to resolve any and all disputes and claims between them ("Legal Claims") in accordance with the terms of this Agreement exclusively . . . Legal Claims shall include any and all of the Parties' rights, causes of action, or claims against or between one another that arise out of or in any way relate to Employee's employment with Employer, unless otherwise excluded[.]

(Aff. of Mark Bostwick in Supp. Mot. to Compel Arb., R. 22-1, PageID 352 (hereinafter "Arbitration Agreement").) As for its scope, the Arbitration Agreement covers "any and all claims for wages, salary, bonuses, commissions, overtime pay, premium pay, vacation pay, severance pay, benefits, contributions, or any other claims for compensation, including, without limitation, claims under the Fair Labor Standards Act[.]" (*Id.*)

On or around September 24, 2021—after less than two years of employment—Dugger quit his TQL position and started a nearly identical role at a competitor, Traffic Tech. TQL alleges

that Dugger lured at least one TQL client to Traffic Tech upon his departure. To add salt to TQL's alleged wound, by employing Dugger, Traffic Tech allegedly violated the terms of a 2016 settlement agreement between itself and TQL that arose from a similar incident.

## B. Procedural History

TQL sued Traffic Tech and Dugger in Ohio state court, alleging violations of state law, the Noncompete Agreement, and the settlement agreement. After Dugger and Traffic Tech removed the action to federal court, TQL moved for a TRO and a preliminary injunction against Traffic Tech and Dugger based on the Noncompete Agreement. In opposition, Dugger invoked the doctrine of unclean hands, arguing that TQL could not enforce an employment-related agreement against him where it had behaved inequitably toward him during his employment. TQL countered that Ohio law bars Dugger's unclean hands defense.

The district court granted TQL's motion in part and imposed a TRO enjoining Dugger from soliciting or accepting the business of current or former TQL customers and from disclosing trade secrets or other confidential information. Although TQL's motion requested both a TRO and a preliminary injunction, the district expressly reserved the question of whether to impose a preliminary injunction until the parties could complete the relevant discovery and indicated that it expected the parties to fully brief that issue at a later date. The court also addressed Dugger's unclean hands argument, explaining that while it could consider the defense regardless of Ohio law, the defense failed on the merits at that stage.

TQL next moved to compel arbitration on Dugger's defense pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3–4. TQL argued that the factual basis for Dugger's defense—allegations of improper pay practices—fell squarely within the purview of the Arbitration Agreement. The district court denied the motion, ruling that the Arbitration Agreement's plain

language revealed its inapplicability to Dugger's defense. TQL timely appealed the decision under the FAA, 9 U.S.C. § 16(a)(1). Dugger and Traffic Tech sought a stay of the TRO—or, alternatively, the imposition of a security bond—in light of that appeal, but a panel of this court denied that motion for failure to comply with Federal Rule of Appellate Procedure 8(a).

Meanwhile, the parties were set to brief the issue of whether a preliminary injunction should replace the TRO. The March 14 deadline for filing a motion for a preliminary injunction came and went. Instead, on April 14, 2022, the district court issued the April Order, extending the terms of the TRO until September 24, 2022, and clarifying that the TRO was "tantamount" to a preliminary injunction and was therefore appealable. Dugger and Traffic Tech appealed the injunctive order pursuant to 28 U.S.C. § 1292(a).

## II. ANALYSIS

### A. Arbitrability of Dugger's Defense

We review the district court's denial of a motion to compel arbitration and its determination of the arbitrability of a given dispute de novo. *Becker v. Delek U.S. Energy, Inc.*, 39 F.4th 351, 354 (6th Cir. 2022).

Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. There is a federal policy in favor of arbitration, but as the Supreme Court has clarified, that policy "is to make arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)) (internal marks omitted). So we will not require arbitration where the agreement's plain language "is not susceptible of an interpretation that covers the asserted

dispute." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge 1943 v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010) (citation omitted).

Contrary to TQL's assertions, the plain language of the Arbitration Agreement is not susceptible to an interpretation that would render Dugger's defense arbitrable. To start, the agreement requires the arbitration of "Legal Claims," defined as "rights, causes of action, or claims" arising out of Dugger's employment. (Arbitration Agreement, PageID 352.) Although not defined in the agreement, ordinarily, "claim" means "to ask for especially as a right"; "right" means "something to which one has a just claim"; and "cause of action" means "the grounds (such as a violation of a right) that entitle a plaintiff to bring a suit." Merriam Webster's Online Dictionary, https://www.merriam-webster.com (2022).

TQL mainly argues that Dugger's defense qualifies as a "claim" or arises from a "right" and therefore is subject to arbitration. Turning first to "claims," TQL argues that the term has a broader meaning than the one used by the district court, which concluded that "claims" had the same meaning in the agreement that it would to a court, i.e., a plaintiff's claims for relief. According to TQL, however, "claims" include general contentions not tethered to any particular relief, i.e., Dugger claims that TQL engaged in improper pay practices. Yet the language surrounding "claims" situates that term within the litigation context, including the term that "claims" is defining: "*Legal* Claims." The provision further describes coverage of "claims *for* wages" under state and federal laws. (Arbitration Agreement, PageID 352.) Here, Dugger's allegations are not claims *for* wages, instead supporting only his argument against TQL's desired relief.

TQL also contends that Dugger's defense falls under the provision's inclusion of "rights." TQL reasons that Dugger's defense arises exclusively from his "rights" under state and federal

wage laws. But these rights—namely, to unpaid wages—have correlative remedies under those federal and state laws, and Dugger's defense invokes no such remedy. And although it is not always the case that a right *must* have a remedy, the context of the term "rights" here as part of a definition of "Legal Claims," presented alongside such language as "claims for wages," suggests that the term "rights" as used in the Arbitration Agreement has that connotation.

Put simply, Dugger's defense is not a "claim" or a "right" or a "cause of action." It strains the common meaning of those words to read "defense" into the Arbitration Agreement's coverage provision. Regardless of federal policy favoring arbitration agreements, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989). The relevant language here shows no agreement to arbitrate a defense.

Apart from the agreement itself, TQL relies on a few unpublished cases from other jurisdictions to argue for the arbitrability of Dugger's defense. Aside from being non-precedential, they are substantively distinguishable. For example, in one such case, the relevant arbitration clause included "issues" and "questions" pertaining to the employment relationship. *See, e.g.*, *NYSA-ILA Pension Tr. Fund. v. Am. Stevedoring, Inc.*, No. 12-2506, 2013 U.S. Dist. LEXIS 44351, at *6 (S.D.N.Y. Mar. 26, 2013). The Arbitration Agreement here lacks those broad terms.

Other cases TQL relied on involved situations where arbitration was ongoing, such that it was nonsensical for related defenses to proceed in court. *See, e.g.*, *USW v. Allegheny Ludlum Corp.*, No. 01-2196, 2002 U.S. Dist. LEXIS 17816, at *9 (W.D. Pa. May 29, 2002). Dugger finds himself in the opposite scenario here: TQL seeks to sever his defense and send it alone to arbitration while its case against him and Traffic Tech stays in court. Proceeding in two separate forums—or staying the litigation while the arbitration proceeds—is contrary to the stated purpose

of the Arbitration Agreement: "avoid[ing] the costs of prolonged, complex litigation when disputes arise between the Parties[.]" (Arbitration Agreement, PageID 352.)

TQL raises several policy arguments as to why we must compel Dugger to arbitrate his defense, suggesting, for example, that future employees will evade arbitration by "labeling" their "claims" as "defenses." But TQL's concerns are overstated. We do not conclude that a defense is *never* arbitrable. Rather, Dugger's defense here is not arbitrable because the Arbitration Agreement, by its plain terms, is not susceptible to an interpretation that makes it so.

And Dugger's defense may yet fail. All that we determine at this juncture is that the defense should be presented to the district court rather than sent to arbitration. The district court's denial of TQL's motion to compel arbitration is affirmed.

## B. Improper April Order

We review a decision granting a preliminary injunction for abuse of discretion, but "evaluate its legal determinations . . . with fresh eyes." *Arizona v. Biden*, 40 F.4th 375, 381 (6th Cir. 2022) (internal citation omitted).

Before turning to the merits of Dugger and Traffic Tech's appeal, we address the fact that the April Order expired in September 2022, a circumstance that would ordinarily render an appeal from that expired order moot. *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc). But the appeal is not moot if a wrongful injunction resulted in harm to the enjoined parties and, as a result, the harmed parties retain some independent cause of action for damages against the party who obtained the improper injunction. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 314–15 (1999); *Liner v. Jafco, Inc.*, 375 U.S. 301, 305– 06 (1964).

Admittedly, this exception typically arises in cases involving an injunction bond, issued as a form of security to safeguard the enjoined party's interests. *See, e.g.*, *Grupo Mexicano*, 527 U.S. at 314–15 (discussing a claim against an injunction bond). Indeed, parties cannot seek damages on an injunction except via a claim on the injunction bond. *Russel v. Farley*, 105 U.S. 433, 437 (1881). And as TQL notes, there was no injunction bond here. But Dugger and Traffic Tech do not seek damages independent of a bond; they claim that a bond should have been issued, against which they should now be able to collect. As such, this particular appeal is not moot. *Cf. Mich. Am. Fed'n of State Cnty. & Mun. Emps. Council 25, Loc. 1640 v. Matrix Hum. Servs.*, 589 F.3d 851, 859–61 (6th Cir. 2009) (concluding that a defendant may recover for a wrongful injunction where no bond was ordered but should have been under the circumstances).

As for the propriety of the April Order, Dugger and Traffic Tech note numerous errors.

First, the district court erred by issuing what amounted to a sua sponte preliminary injunction. In its April Order, the district court explained that the parties had been treating the existing TRO as a preliminary injunction because they had not acted swiftly to obtain discovery relevant to the question of whether to impose a preliminary injunction, making the TRO "tantamount" to a preliminary injunction. So, it reasoned, it could simply extend the TRO's terms a few more months. The court also noted that TQL's earlier motion requested a TRO and a preliminary injunction, and that it had declined to issue a preliminary injunction at that juncture "only because the parties had requested discovery and another chance to brief the question of injunctive relief." (April Order, R. 40, PageID 777–78.) And while discovery was proceeding at a glacial pace, the court offered no other explanation for why the parties would not receive another chance to fully brief a preliminary injunction when it had already set their briefing schedule.

Although the district court retains discretion to modify the injunctive relief it issues, *see Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012), nothing in the case law or Civil Rule of Procedure 65 allows the court to declare that a TRO has become a preliminary injunction. The case that the district court cited for its assertion that such recategorization was appropriate, *Overstreet v. Lexington Fayette Urb. Cty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002), dealt only with the appealability of a confusingly named request for relief, not with the district court's power to convert a TRO to a preliminary injunction without meeting the requirements of Rule 65.

Indeed, Rule 65(a) contemplates a hearing on the merits of a preliminary injunction even after the issuance of a TRO, *see also* Rule 65(b)(3), and our precedent makes clear that the party opposing the injunction must be "given a fair opportunity to oppose the application and to prepare for such opposition." *Certified Restoration Dry Cleaning, Network, LLC v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (quoting *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 484 (6th Cir. 2002)). No such opportunity was given here. Instead, the district court stated that "[n]othing has changed this Court's view" on the merits of the underlying TRO, neglecting the fact that Dugger and Traffic Tech were not given an opportunity to present evidence or argument to do just that. (April Order, R. 40, PageID 782.) The failure to afford Dugger and Traffic Tech the chance to present evidence or argument opposing a preliminary injunction constituted reversible error. *See Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 246 (6th Cir. 2011).

Second, the district court erroneously failed to consider whether a bond was appropriate. District courts must at least consider whether to order a bond before issuing an injunction. *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 400–01 (6th Cir. 2012). But the word "bond" never once appears in the April Order. Once again, nothing in Rule 65 or relevant

cases suggests that a district court can skip considering a bond at the preliminary injunction stage because it considered and declined to impose a bond at the TRO stage. The district court's failure to even address the issue of bond in its April Order was an abuse of discretion. *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013).

Third, the April Order's terms were impermissibly vague and overbroad. *See Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022). Among other requirements, Rule 65(d)(1) requires every preliminary injunction to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The April Order violates this by directing the parties to the initial TRO, and the TRO fares no better.

For example, the TRO requires Dugger to "abide by all terms of the Agreement with TQL" and states "Dugger is enjoined from disclosing any trade secrets or confidential information" without defining the terms "trade secrets" or "confidential information," a decision made all the more puzzling based on its characterization of TQL's approach to trade secrets as "unexacting." (Order Granting TRO, R. 15, PageID 280 n.4, 290.) The April Order's incorporation of the TRO, which failed to define its relevant terms, therefore constituted reversible error. *See Union Home*, 31 F.4th at 363–65.

Last but not least, the district court also erred by reiterating the conclusions and analysis from the TRO rather than analyzing anew the four factors required to determine whether a preliminary injunction is appropriate: the movant's likelihood of success on the merits; the movant's potential for irreparable injury; the possibility of substantial harm to the opposing parties; and the public interest. *See id.* at 365–66 (citing *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam)). Ordinarily, we employ a "highly

deferential" standard of review to the district court's weighing of these factors. *Certified Restoration*, 511 F.3d at 541. But the district court left us nothing to defer to here.

Because the April Order was imposed in error, it must be reversed. Although ordinarily we would not vacate an expired preliminary injunction, *see Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 397 (6th Cir. 2020) (per curiam), because this appeal is not moot and vacatur is an equitable remedy, we also vacate the injunction. On remand, the district court should require the parties to brief the issue of whether a security bond should have been issued and in what amount based on Dugger and Traffic Tech's alleged damages from the April Order.

### III. CONCLUSION

We affirm the district court's decision denying TQL's motion to compel arbitration. We reverse the April Order, vacate the injunction, and remand to the district court for consideration of Dugger and Traffic Tech's damages.